Brett A. Shumate (*pro hac vice*)
Kaytlin L. Roholt (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: 202.879.3939
Facsimile: 202.626.1700
E-Mail: bshumate@jonesday.com
        kroholtlane@jonesday.com

Brett W. Johnson (#021527)
Anthony T. King (#027459)
Ryan J. Regula (#028037)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
        aking@swlaw.com
        rregula@swlaw.com

*Counsel for Defendant National
Republican Senatorial Committee*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WinRed Technical Services, LLC, a Delaware limited liability company, and National Republican Senatorial Committee, a District of Columbia non-profit organization,<br><br>Defendants. | No. 3:20-cv-08150-PCT-JJT<br><br>**NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S MOTION TO DISMISS UNDER RULE 12(b)(6) OR TO STAY PROCEEDINGS**<br><br>**(Oral Argument Requested)** |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant National Republican Senatorial Committee ("NRSC") moves to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. In the alternative, the NRSC respectfully requests that the Court stay this case pending the Supreme Court's review of the Ninth Circuit's decision in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). This Motion is supported by the following memorandum of points and authorities and the Court's record.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.     INTRODUCTION**

Two weeks after the complaint was filed in this case, the Supreme Court declared a provision of the Telephone Consumer Protection Act ("TCPA") unconstitutional. In *Barr v. American Association of Political Consultants*, six justices held that 47 U.S.C. § 227(b)(1)(A)(iii)—the same statute at issue here—violated the First Amendment. 140 S. Ct. 2335 (2020). The Court concluded that the statute was content based because it allowed autodialed calls to collect a government debt, but did not allow such calls when they were made for political purposes—much like the text messages at issue in this case. The Court then held that § 227(b)(1)(A)(iii) of the TCPA failed First Amendment scrutiny.

The Supreme Court's decision in *Political Consultants* compels dismissal of this lawsuit. Plaintiff Brenda Whittaker claims that the NRSC and WinRed Technical Services, LLC ("WinRed") violated § 227(b)(1)(A)(iii) by sending text messages to her and a putative class from 2016–2020. *See* Compl. ¶¶ 14, 16, 27. But it is well established that a defendant cannot be held liable for conduct that was proscribed by an unconstitutionally discriminatory law. *Grayned v. City of Rockford*, 408 U.S. 104, 107 (1972). Under this established precedent, the NRSC cannot be held liable as a matter of law for violating § 227(b)(1)(A)(iii) at a time when that statute unconstitutionally restricted speech.

Whittaker's claim cannot be salvaged by the Supreme Court's decision to invalidate and sever the government-debt exception from the rest of TCPA. As the Supreme Court recently explained, one held liable "under a law classifying on an impermissible basis" may

escape that liability "without regard to the manner in which the legislature might subsequently cure the infirmity." *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017). The Court's decision to sever the statute prospectively does not affect the retrospective liability of callers like the NRSC who acted at the time the statute unconstitutionally restricted speech. *See Grayned*, 408 U.S. at 107 n.2.

Thus, this case should be dismissed, but at a minimum, the Court should stay the case pending the Supreme Court's review of the Ninth Circuit's decision in *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). In *Facebook*, the Ninth Circuit held that dialing equipment that stores lists of phone numbers and dials from those stored lists—one type of equipment that the NRSC is alleged to have used to text Whittaker—qualifies as an autodialer under the TCPA. *Id.* at 1151. The Ninth Circuit's interpretation of the statutory definition of autodialer, however, has been rejected by several other circuits. And less than three weeks after the complaint was filed in this case, the Supreme Court granted certiorari in *Facebook* to resolve this circuit split. *See Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020). Given the uncertainty over the continued viability of the Ninth Circuit's interpretation, the Court should at least stay this case pending the Supreme Court's decision in *Facebook* if it does not dismiss the case under *Political Consultants*.

A stay is warranted because the proper interpretation of autodialer is a dispositive issue in this case. Forcing the NRSC to defend against Whittaker's claim would cause the NRSC substantial hardship because Whittaker's claim might be precluded by the Supreme Court's forthcoming decision. A stay will also promote judicial economy and the orderly course of justice because the parties and the Court will have wasted substantial time and resources litigating Whittaker's claim under a defunct legal standard if the Supreme Court disagrees with the Ninth Circuit's interpretation of autodialer. By contrast, a stay will not cause Whittaker any undue prejudice because she can continue pursuing her claim for statutory damages as soon as the Supreme Court issues its decision. Under these circumstances, a stay pending the Supreme Court's decision in *Facebook* would be

"efficient for [this Court's] docket and the fairest course for the parties." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

## II. RELEVANT BACKGROUND

The TCPA makes it unlawful for any person to call a cellular telephone using an "automatic telephone dialing system" (also known as an ATDS or autodialer) without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. § 227(a)(1).

The constitutionality of § 227(b)(1)(A)(iii) has been a source of debate since 2015. That year, Congress amended the TCPA by exempting calls "made solely to collect a debt owed to or guaranteed by the United States." *Id*. § 227(b)(1)(A)(iii). The Supreme Court resolved this debate in a suit seeking prospective relief against the government in the form of a declaratory judgment. In *Political Consultants*, the Court declared § 227(b)(1)(A)(iii) unconstitutional, invalidated the government-debt exception, and severed that provision from the rest of the TCPA. *See* 140 S. Ct. at 2347–49 (Kavanaugh, J.) (plurality op.); *id.* at 2357 (Sotomayor, J., concurring in the judgment). But the Court had no occasion to consider the retrospective liability of defendants who violated § 227(b)(1)(A)(iii) in the past because the plaintiffs in *Political Consultants* did not raise that issue in their suit for prospective relief against the government.

The meaning of the phrase "automatic telephone dialing system" has also been a source of confusion in recent years. In *Marks v. Crunch San Diego, LLC*, the Ninth Circuit held that "the statutory definition of [autodialer] is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." 904 F.3d 1041, 1052 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019). The Ninth Circuit subsequently reaffirmed *Marks* in *Facebook*. *See* 926 F.3d at 1151. The Ninth Circuit's interpretation of the statutory definition of autodialer, however, is in direct conflict with the interpretation

adopted by the Third, D.C., Eleventh, and Seventh Circuits. Those courts have held that simply having the capacity to store and dial numbers is not enough to make a device an autodialer. *See Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 118, 121 (3d Cir. 2018); *ACA Int'l v. FCC*, 885 F.3d 687, 697 (D.C. Cir. 2018); *Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1311 (11th Cir. 2020); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466 (7th Cir. 2020).

On July 9, 2020, the Supreme Court granted certiorari in *Facebook* to resolve this circuit split. *See Facebook*, 2020 WL 3865252, at *1. The question presented in *Facebook* is whether the definition of autodialer in the TCPA encompasses any device that can store and automatically dial telephone numbers, even if the device does not use a random or sequential number generator. *See id.*

In this case, Brenda Whittaker alleges that the NRSC and WinRed violated § 227(b)(1)(A)(iii) by using an autodialer to send her seven political text messages in April 2020. Compl. ¶¶ 14–16, 36–42. In particular, she alleges that "[t]he telephone dialing equipment utilized by Defendants (or a third person acting on behalf of Defendants), which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form [sic] a database of telephone numbers, in an automatic and systematic manner." *Id*. ¶ 38. She also seeks damages on behalf of a putative class for alleged violations of § 227(b)(1)(A)(iii) occurring as far back as June 2016. *Id*. ¶ 27.

The NRSC now moves to dismiss the complaint for failure to state a claim under Rule 12(b)(6) or, alternatively, to stay this case pending the Supreme Court's decision in *Facebook*.

**III.   STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Dismissal is warranted where "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *SmileCare Dental Grp. v. Delta Dental Plan of*

1  *Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).  The court "may dismiss a complaint as a matter
2  of law for . . . lack of a cognizable legal theory." *Id.* (internal quotation marks omitted).

3  "A district court has discretionary power to stay proceedings in its own court."
4  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*,
5  299 U.S. 248, 254 (1936)).  A district court may stay a case "pending resolution of
6  independent proceedings which bear upon the case," even if those proceedings are not
7  "necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863–64
8  (citations omitted).

9  **IV.     ARGUMENT**

10         **A.      The Court Should Dismiss The Complaint Because The NRSC Cannot
                    Be Held Liable For Violating An Unconstitutional Law.**
11

12         The Supreme Court has already declared that § 227(b)(1)(A)(iii) of the TCPA was
13  unconstitutional at the time when the NRSC allegedly texted Whittaker and the putative
14  class.  Although the Court prospectively severed the government-debt exception from the
15  rest of the TCPA, the Court did not address the retrospective liability of companies that
16  violated § 227(b)(1)(A)(iii) in the past.  But the Court's longstanding precedent confirms
17  that the NRSC cannot be held liable for violating a statute that was unconstitutional when
18  it sent text messages during the 2016–2020 class period.  The Court should therefore dismiss
19  the complaint for failure to state a claim.

20         In *Political Consultants*, a suit seeking prospective relief against the government, six
21  justices held that § 227(b)(1)(A)(iii) of the TCPA violated the First Amendment. *See* 140
22  S. Ct. at 2347 (Kavanaugh, J.) (plurality op.); *id.* at 2356–57 (Sotomayor, J., concurring in
23  the judgment); *id.* at 2363 (Gorsuch, J., concurring in the judgment in part and dissenting
24  in part).  "Because the law favors speech made for collecting government debt over political
25  and other speech, the law is a content-based restriction on speech." *Id.* at 2346 (Kavanaugh,
26  J.) (plurality op.).  "The Government concede[d] that it cannot satisfy strict scrutiny to
27  justify the government-debt exception." *Id.* at 2347.

28

To remedy the First Amendment problem prospectively, seven justices invalidated and severed the government-debt exception from the rest of TCPA. *Id.* at 2343; *id.* at 2357 (Sotomayor, J., concurring in the judgment); *id.* at 2363 (Breyer, J., concurring in the judgment with respect to severability and dissenting in part). Although the Court awarded this prospective relief, it did not address a defendant's retrospective liability for violating § 227(b)(1)(A)(iii) in the past. Nor could the Court have addressed that issue, because the plaintiffs only sought prospective relief for calls they intended to place, not retrospective relief for calls they had already placed. *See id.* at 2345 (Kavanaugh, J.) (plurality op.).

Although this case involves a question not addressed in *Political Consultants*, the Court's precedents compel the conclusion that the NRSC cannot be held liable for violating § 227(b)(1)(A)(iii) during the 2016–2020 class period, when the statute unconstitutionally restricted speech. As a general rule, "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994). Subsequent changes in the law are irrelevant to assessing the legal effect of a defendant's conduct. As the Court recently explained, "a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." *Morales-Santana*, 137 S. Ct. at 1699 n.24; *accord Welsh v. United States*, 398 U.S. 333, 361–64 (1970) (Harlan, J., concurring in result) (conviction stemming from unequal treatment "must be reversed" regardless of how Congress would cure the unequal treatment).

In *Grayned*, for example, the Court held that a defendant cannot be held retrospectively liable for conduct that was proscribed by an unconstitutionally discriminatory law, even if the unconstitutionality is later cured. 408 U.S. at 104. John Grayned was convicted in 1969 for violating a city's anti-picketing ordinance. *Id.* at 105. At the time of his arrest and conviction, the ordinance excepted labor picketing, but the city amended the ordinance two years later to eliminate this exception. *Id.* at 107 n.2. "Necessarily," the Court observed, "we must consider the facial constitutionality of the

- 7 -

ordinance in effect when [Grayned] was arrested and convicted." *Id.* Because the ordinance violated equal protection in 1969, Grayned's "conviction under this invalid ordinance must be reversed," even though the city subsequently eliminated the ordinance's constitutional flaw. *Id.* at 107 (citing *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92 (1972)).

*Grayned* is materially indistinguishable from this case. In both cases, the defendant allegedly violated laws classifying speech on an impermissible basis: the anti-picketing ordinance excepted labor picketing, just as the TCPA excepted calls to collect government debt. And in both cases, the constitutional flaw was subsequently eliminated: the city eliminated the labor-picketing exception in *Grayned*, just as the Supreme Court eliminated the government-debt exception in *Political Consultants*.

Under this precedent, the NRSC cannot be held liable for texting Whittaker and the putative class because § 227(b)(1)(A)(iii) unconstitutionally restricted speech at the time the texts were sent in 2016–2020. The legality of the NRSC's conduct (and the validity of § 227(b)(1)(A)(iii) of the TCPA) must be judged under the law "in effect" when the NRSC sent the texts, just as the Court evaluated the legality of Grayned's conduct (and the validity of the anti-picketing ordinance) at the time of his arrest and conviction. *Grayned*, 408 U.S. at 107 n.2; *see also Landgraf*, 511 U.S. at 265. The version of § 227(b)(1)(A)(iii) in effect when the NRSC texted Whittaker and the putative class in 2016–2020 was unconstitutional, *Political Consultants*, 140 S.Ct. at 2347 (Kavanaugh, J.) (plurality op.), because it classified speech "on an impermissible basis," *Morales-Santana*, 137 S. Ct. at 1699 n.24, just like the anti-picketing ordinance in *Grayned*, 408 U.S. at 107. The NRSC cannot be held liable for violating a statute that was "invalid" when the texts were sent. *Grayned*, 408 U.S. at 107. This is so "without regard to the manner in which the" Supreme Court "subsequently cure[d] the infirmity" by severing the unconstitutional part of the TCPA. *Morales-Santana*, 137 S. Ct. at 1699 n.24.

The Court's holding in *Political Consultants* also compels dismissal of Whittaker's complaint because political speech must be "treated equally with debt-collection speech." 140 S.Ct. at 2344 (Kavanaugh, J.) (plurality op.). The Court cured the statute's unequal

treatment prospectively by extending § 227(b)(1)(A)(iii) to government debt collectors who were previously exempted from the statute. *Id.* at 2354–55. To ensure equal treatment retrospectively, the NRSC cannot be held liable for texts sent between the enactment of the government-debt exception in 2015 and the entry of final judgment in *Political Consultants*, just as "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment." *Id.* at 2355 n.12. To impose liability for political calls while excusing calls to collect government debts would "endors[e] the very same kind of content discrimination [the Court was] seeking to eliminate" in *Political Consultants*. *Id.* at 2366 (Gorsuch, J., concurring in judgment in part and dissenting in part).

To be sure, three justices stated that the decision in *Political Consultants* "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12 (Kavanaugh, J.) (plurality op.). But that unreasoned dicta is neither controlling nor persuasive. The Court's existing precedents answer whether the NRSC can be held liable for violating § 227(b)(1)(A)(iii) at a time when the statute was unconstitutional.

The Ninth Circuit has never addressed the question of retrospective liability under § 227(b)(1)(A)(iii) of the TCPA. In *Facebook*, the Ninth Circuit held that § 227(b)(1)(A)(iii) was unconstitutional, 926 F.3d at 1156, but the court did not address Facebook's retrospective liability. In a subsequent case, the Ninth Circuit acknowledged that retrospective liability is a distinct question, but the court declined to answer it because it had not been properly presented. *See Gallion v. United States*, 772 F. App'x 604, 606 (9th Cir. 2019), *cert. denied sub nom. Charter Commc'ns v. Gallion*, No. 19-575, 2020 WL 3865257 (U.S. July 9, 2020). This Court should address the question of retrospective liability under § 227(b)(1)(A)(iii) by dismissing Whittaker's complaint against the NRSC because that result is compelled by *Grayned*, *Morales-Santana*, and *Political Consultants*.

**B.  In The Alternative, The Court Should Stay This Case Pending The Supreme Court's Decision In *Facebook, Inc. v. Duguid*.**

The Court should dismiss Whittaker's complaint for failure to state a claim because

the NRSC cannot be held liable for violating § 227(b)(1)(A)(iii) of the TCPA. But if the Court does not dismiss the complaint, the Court should stay proceedings pending the Supreme Court's decision in *Facebook* because the Court's decision will resolve a controlling question of law in this case and could preclude Whittaker's ability to pursue her TCPA claim against the NRSC.

The Supreme Court's forthcoming decision in *Facebook* will directly affect this case. In *Facebook*, the Ninth Circuit held that dialing equipment that stores lists of phone numbers and dials from those stored lists qualifies as an autodialer under the TCPA. 926 F.3d at 1151. In this case, Whittaker relies on *Facebook* by alleging that the NRSC used dialing equipment with the capacity to "store lists of telephone numbers, and to dial such numbers." Compl. ¶ 10; *see also id*. ¶ 38. If the Supreme Court rejects the Ninth Circuit's interpretation of autodialer in *Facebook*, Whittaker's TCPA lawsuit would fail on the merits.

A stay of this case pending the decision in *Facebook* is warranted. "A district court has discretionary power to stay proceedings in its own court." *Lockyer*, 398 F.3d at 1109. District courts frequently grant such stays where a court whose precedent binds them will soon decide a key issue related to the pending case. *See, e.g., Sensibaugh v. EF Educ. First, Inc.*, No. 20-cv-1068, 2020 WL 3455641, at *1 (C.D. Cal. May 7, 2020) ("In light of the United States Supreme Court's pending case, which is expected to rule on the scope of the TCPA, the Court will exercise its discretion and stay this action until the Supreme Court's ruling."); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 19-cv-05007, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying a putative TCPA class action pending the Supreme Court's decision in *Political Consultants* in part because "[t]he opinion in *AAPC* may provide useful guidance in this case"); *Smith v. Experian Info. Solutions, Inc.*, No. 17-cv-00629, 2018 WL 1427162, at *3 (C.D. Cal. Jan. 19, 2018) (granting a stay because the Ninth Circuit would soon render a decision that would "be dispositive, or at least instructive, on the two central issues in th[e] case"); *Hartranft v. TVI, Inc.*, No. 15-cv-01081, 2015 WL 13847485, at *2 (C.D. Cal. Nov. 16, 2015) (granting a stay in a TCPA case because "[t]he

prospect—however uncertain—of the parties and Court engaging in costly litigation over the next few months, only to have the jurisdictional rug pulled out from under them by a Supreme Court ruling, counsels for a stay").

When assessing whether to issue a discretionary stay of proceedings, the court "must weigh competing interests affected by a grant or denial of a stay, including (1) the possible damage caused by a stay, (2) the hardship to the parties if the suit is allowed to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues from a stay." *In re Sprouts Farmers Mkt., Inc. Employee Data Sec. Breach Litig.*, No. 16-MDL-02731, 2017 WL 3051243, at *2 (D. Ariz. May 24, 2017) (citing *Lockyer*, 398 F.3d at 1110). All three factors weigh in favor of a stay here.

*First*, a stay would not cause Whittaker to suffer any undue prejudice or hardship. Whittaker seeks statutory damages for past conduct, *see* Compl. ¶¶ 26, 41–42, but the Ninth Circuit "has made clear that monetary recovery cannot serve as the foundation to deny a stay," *In re Sprouts*, 2017 WL 3051243, at *2 (citing *Lockyer*, 398 F.3d at 1110). Although Whittaker does seek injunctive relief, *see* Compl. ¶ 26 & pp. 10–11, she has not sought a preliminary injunction, which suggests that she will not "suffer irreparable damage and a miscarriage of justice if the case were to be stayed," *In re Sprouts*, 2017 WL 3051243, at *2. "The general prejudice of having to wait for resolution is not a persuasive reason to deny [a] motion for stay," *Sorensen ex rel. Sorensen Research & Dev. Tr. v. Black & Decker Corp.*, No. 06-cv-1572, 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007), because a stay pending *Facebook* will delay proceedings by, at most, ten months, which is "a reasonable time in relation to the urgency of [Whittaker's] claim[]," *Leyva*, 593 F.2d at 864; *see, e.g.*, *Flores v. Collection Consultants of California*, No. 14-cv-0771, 2015 WL 12791371, at *2 (C.D. Cal. July 27, 2015); *Alvarez v. T-Mobile USA, Inc.*, No. 10-cv-2373, 2010 WL 5092971, at *2 (E.D. Cal. Dec. 7, 2010). And given that "this case is in its early stages" and no deadlines have been set, the risk of prejudice due to delay is particularly low. *See McElrath v. Uber Techs., Inc.*, No. 16-cv-07241, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017).

*Second*, the NRSC will suffer substantial hardship in the absence of a stay. The Supreme Court's decision in *Facebook* will resolve a dispositive issue in this case—*i.e.*, the proper definition of autodialer. If the Supreme Court overturns the Ninth Circuit's decision in *Facebook* and holds that a device that dials numbers from a stored list is not an autodialer, Whittaker would be precluded from pursuing her claim that the NRSC is liable for sending messages using dialing equipment that dials numbers from a stored list. Compl. ¶¶ 10, 38. But without a stay, the NRSC "would be required to defend a large class action that might be rendered moot and unnecessary by the [*Facebook*] decision." *In re Sprouts*, 2017 WL 3051243, at *2. "[I]t would prove to be an extraordinary waste of time and money to continue litigating this case only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply." *Nguyen v. Marketsource, Inc.*, No. 17-cv-02063, 2018 WL 2182633, at *7 (S.D. Cal. May 11, 2018) (internal quotation marks omitted). The hardship to the NRSC if this suit were permitted to move forward therefore weighs in favor of a stay.

*Third*, granting a stay under these circumstances is in "the orderly course of justice, and in the interest of judicial economy." *In re Sprouts*, 2017 WL 3051243, at *3. Because the Supreme Court's decision in *Facebook* could foreclose Whittaker's claim, a stay would "conserve resources which could be unnecessarily expended reviewing the adequacy of the pleadings, resolving discovery disputes, considering class certification, and deciding dispositive motions." *Id.* Given the possibility that the Supreme Court might disagree with the Ninth Circuit's interpretation of autodialer, "[i]t would be inconsistent with judicial principles of efficacy if litigation continued in this action, requiring additional briefing on, and adjudication of, issues using a standard of law currently in flux." *In re Sequenom, Inc. Stockholder Litig.*, No. 16-cv-02054, 2019 WL 1200091, at *2 (S.D. Cal. Mar. 13, 2019). And "[r]egardless of whether the Supreme Court affirms or overrules [*Facebook*], the issues before the Court will be simplified" because the Supreme Court will have clarified the definition of autodialer and simplified the issues in this case. *In re Sprouts*, 2017 WL 3051243, at *3; *see also In re Sequenom*, 2019 WL 1200091, at *2 (staying a putative class

action lawsuit pending a Supreme Court decision where "the Supreme Court's decision w[ould] determine the appropriate pleading standard for a disputed element of Plaintiff's . . . claim").

## V. CONCLUSION

For these reasons, the NRSC respectfully requests that the Court dismiss Plaintiff's complaint with prejudice or, in the alternative, stay this case pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*.

DATED this 17th day of August, 2020.

SNELL & WILMER L.L.P.

By: */s/Anthony T. King*
    Brett W. Johnson
    Anthony T. King
    Ryan J. Regula
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202

JONES DAY

Brett A. Shumate (admitted *pro hac vice*)
Kaytlin L. Roholt (admitted *pro hac vice*)
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  202.879.3939
Facsimile: 202.626.1700
E-Mail:  bshumate@jonesday.com
        kroholtlane@jonesday.com

*Attorneys for Defendant National Republican Senatorial Committee*

**CERTIFICATION OF CONFERRAL**

In accordance with LRCiv 12.1(c) and this Court's Order dated June 24, 2020 (Dkt. 6), the NRSC certifies that the parties, through undersigned counsel, met and conferred on August 5, 2020, regarding the sufficiency of the allegations in the complaint, the legal challenges that would be made in a Motion to Dismiss, whether an amendment to the complaint could cure the defects outlined in the NRSC's Motion to Dismiss, and whether a stay pending *Facebook* would be appropriate. The parties have been unable to agree that the pleading is curable by a permissible amendment.

DATED this 17th day of August, 2020.

JONES DAY

By: s/ *Brett A. Shumate*
Brett A. Shumate (*pro hac vice*)
Kaytlin L. Roholt (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

SNELL & WILMER L.L.P.

By: s/ *Anthony T. King*
Brett W. Johnson (#021527)
Anthony T. King (#027459)
Ryan J. Regula (#028037)
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

*Counsel for Defendant National Republican Senatorial Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*s/Audrey Dodgin*

4830-6770-7848