Jason Torchinsky (VSB 47481)*
Jonathan P. Lienhard (VSB 41648)*
Dallin B. Holt (TX 24099466)*
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: jtorchinsky@hvjt.law
Email: jlienhard@hvjt.law
Email: dholt@hvjt.law
* *Admitted Pro Hac Vice*

Zach R. Fort (#031643)
63 West Buena Vista Drive
Tempe, Arizona 85284
Telephone: (480) 242-4279
Email: fort.zach@gmail.com

*Attorneys for Defendant WinRed Technical Services, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Brenda Whittaker, individually and, on behalf of all others similarly situated<br><br>Plaintiff(s),<br><br>v.<br><br>WinRed Technical Services, LLC, et al.<br><br>Defendants. | Case No. 3:20-cv-08150-PCT-JJT<br><br>**DEFENDANT WINRED TECHNICAL SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR, IN THE ALTERNATIVE, MOTION TO STAY** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant WinRed Technical Services, LLC ("WRTS") moves to dismiss Plaintiff's Complaint with

respect to itself.[1] Plaintiff fails to establish Article III standing as to WRTS and also fails to state a claim upon which relief can be granted. In the alternative, WRTS requests that this matter be stayed pending the resolution of *Facebook, Inc. v. Duguid*, No. 19-511, currently pending in the United States Supreme Court.

## **INTRODUCTION**

On June 23, 2020, Plaintiff filed a facially deficient Complaint with respect to WRTS alleging certain violations under the Telephone Consumer Protection Act ("TCPA"). [Dkt. 1]. On July 20, 2020, the Court granted the parties' Stipulation for Extension of Time to File Responsive Pleading on or before August 17, 2020. [Dkt. 12]. In her Complaint, Plaintiff alleges that she improperly received seven text messages from Defendants and is therefore seeking statutory, punitive, and compensatory damages, as well as injunctive relief. [Dkt. 1 at 4:15-5:10, 10:20-11:8]. Initially, Plaintiff lacks standing because she has sued the wrong party. WRTS has never sent a text message to Plaintiff. As such, WRTS moves to dismiss under Rule 12(b)(1) because Plaintiff fails to meet the traceability and redressability prongs of Article III standing. Plaintiff has also failed to state a claim under Rule 12(b)(6) because Plaintiff failed to properly allege that an "automatic telephone dialing system" ("ATDS") was used by WRTS to place the text messages. Therefore, for the reasons that follow, this Court should dismiss Plaintiff's claims.

---

[1] This motion is filed only by WRTS. Other defendants are represented by separate counsel and may have different factual or legal arguments to present.

## I. PLAINTIFF LACKS STANDING.

This Court lacks jurisdiction over Plaintiff's claims against WRTS. An attack on the Court's subject matter jurisdiction under 12(b)(1) can arise as either a facial attack or a factual attack. "To resolve a 12(b)(1) motion, the Court does not presume Plaintiffs' allegations to be true and may 'look to facts outside the pleadings to determine whether [it] ha[s] jurisdiction.'" *Valenzuela v. Ducey*, No. CV-16-03072-PHX-DGC, 2017 U.S. Dist. LEXIS 10993, at *6 (D. Ariz. Jan. 26, 2017) (quoting *Cassirer v. Kingdom of Spain*, 616 F.3d 1019, 1043 (9th Cir. 2010)). "The Court may 'resolv[e] factual disputes where necessary.'" *Id.* (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F.Supp.2d 910, 919 (D. Ariz. 2006) (citation omitted). "With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction." *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005). WRTS brings a factual attack as to the Court's jurisdiction because it is an improper party to this lawsuit and has committed no wrongs that are traceable to it or redressable by it.[2] *See* Declaration

---

[2] In regard to holding an evidentiary hearing on jurisdictional motions to dismiss, just as this Court previously held when discussing a motion to dismiss for lack of personal jurisdiction (same logic applies here to subject-matter jurisdiction): "Because there is no statutory method for resolving the question of [] jurisdiction, 'the mode of determination is left to the trial court.' Where, as here, a court resolves the question of [] jurisdiction upon motions and supporting documents . . .", Order Granting Def. Mot. to Dismiss at 2, *ThermoLife International LLC v. NetNutri LLC*, 2:18-cv-04248-JJT, ECF No. 24 (D. Ariz. Jul. 17, 2019) (internal citations omitted), the Court is free to rule on a motion to dismiss on the papers alone when the parties have had an opportunity to adequately brief the issues and oral argument would not aid in the Court's resolution of

of Gerrit Lansing (Exhibit A).

Federal court jurisdiction is limited by what the Constitution calls "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Part of the "case or controversy requirement of Article III" is standing. *Id*. at 560. The "irreducible constitutional minimum of standing contains three elements": (1) injury-in-fact; (2) traceability; (3) and redressability. *Id*. Of particular import here are traceability and redressability. For an injury to be traceable, the injury complained of by a plaintiff must be "traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (internal alterations omitted). As to redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (internal quotations omitted). Further, the fact that Plaintiff alleges a putative class does not change the standing analysis. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016) ("That a suit may be a class action adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong." (internal alteration and quotation omitted)).

Plaintiff's claims are neither traceable to, nor redressable by, WRTS. Traceability is the "causal connection between the injury and the conduct complained of . . . ." *Lujan*, 504 U.S. at 560. An injury is not traceable to a particular defendant when the injury is, at

---

the Motion. *See* Fed. R. Civ. P. 78(b); LR Civ. 7.2(f). Here, WRTS respectfully requests the Court resolve this Motion on the papers.

4

its core, the result of third party conduct, and it would be entirely speculative to conclude that the defendant's conduct was the cause of such third party conduct. *Clinton v. City of New York*, 524 U.S. 417, 460-61 (1998). Relatedly, redressability dictates that it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted). "[I]f . . . a favorable judicial decision would not require the defendant to redress the plaintiff's claimed injury, the plaintiff cannot demonstrate redressability." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018); *see also Duit Constr. Co. v. Bennett*, 796 F.3d 938, 941 (8th Cir. 2015) (holding that there is no redressability if a defendant "ha[s] no power[] to redress the injuries alleged"). If a plaintiff sues the wrong party, she "cannot satisfy the 'fairly traceable' (causation) and redressability elements of standing. . . ." *Duit Constr. Co.*, 796 F.3d at 941. Further, if a plaintiff sues the wrong party, a favorable judicial opinion would not require that particular defendant to redress plaintiff's claimed injury because the wrongly sued party's conduct was not responsible for the injury in the first place. *See M.S. v. Brown*, 902 F.3d at 1083.

      Plaintiff's Complaint alleges seven violations of 47 U.S.C. § 227(b)(1)(A). The relevant subsection of the TCPA states that a violation occurs when "any person within the United States . . . make[s] any call . . . using any automated telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). A necessary precondition to liability under the TCPA is that a "person . . . make[s] any call." *Id*. Therefore, pursuant to the act, a person must "make any call" to trigger liability under the act. As explained further, WRTS made no such call.

WRTS is a technology vendor that creates web-based platforms and related web-based infrastructure to receive donations from individuals who are solicited by political committees. *See* Exhibit A at ¶ 4. WRTS does not call or text individuals to solicit contributions. *Id.* at ¶¶ 9, 11, 13-21, 25. WRTS does not send political messages to individuals, or groups of individuals. *Id.* at ¶¶ 9, 18, 25. WRTS does not engage in soliciting contributions through text messaging or phone calls. *Id*. at ¶¶ 15, 25. Because of that fact, WRTS does not use an automated telephone dialing system, or any other type of system, to contact any person, or groups of persons, to solicit donations or send political messages. *Id.* at ¶¶ 14-22, 25. WRTS has never contacted, caused anyone to contact, or paid anyone to contact Plaintiff or any group of people that includes Plaintiff. *Id*. Put simply, WRTS has never contacted Plaintiff via phone or text message and has never caused anyone to contact Plaintiff via phone or text message. *Id.* at ¶ 25.

WRTS cannot be sued under the TCPA because WRTS does not make any calls that would trigger liability under the TCPA. *See, e.g., id.* at ¶¶ 7, 9, 14. Therefore, Plaintiff's alleged injury-in-fact is not traceable to WRTS nor redressable by any adverse decision against WRTS (i.e. an injunction against WRTS to stop sending messages to Plaintiff would have no effect to redress or stop Plaintiff's alleged injury because WRTS in not involved in any way in sending messages to Plaintiff). *Id.* at ¶¶ 14-22, 25. Plaintiff's alleged injuries are the cause of some other third party, not WRTS. Because Plaintiff's alleged injuries are not traceable to WRTS, Plaintiff lacks standing as to WRTS. Furthermore, because WRTS did not cause any of Plaintiff's alleged harms, none of the proposed relief sought against WRTS would redress her injury. Therefore, the case

against WRTS must be dismissed because, as the incorrect party, Plaintiff cannot satisfy the fairly traceable (causation) and redressability elements of standing.

## II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER RULE 12(b)(6).

### A. Plaintiff's Complaint Fails to State a Claim Because It Alleges No Plausible Set of Facts That Show WRTS Sent Communications Using an ATDS.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While "detailed factual allegations" are not required, Rule 8 does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To wit, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Id.*

While the Court must accept all *factual* allegations as true, that "tenet … is inapplicable to legal conclusions." *Id.* Critically, the *Iqbal* standard requires a plaintiff to provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. The claim must be more than conceivable and must instead be facially plausible. *See Twombly*, 550 U.S. at 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "[T]he trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." *Tracht Gut, LLC v.*

*L.A. Cty. Treasurer & Tax Collector*, 836 F.3d 1146, 1150 (9th Cir. 2016). Here, Plaintiff merely offers conclusory allegations directed at WRTS and fails to assert factual allegations that, taken as true, create a reasonable inference that WRTS (1) called or texted Plaintiff, or (2) did so using an ATDS.

The Complaint alleges multiple violations of the TCPA. [Dkt. 1 at ¶¶ 35-42]. As pleaded, a violation under the TCPA occurs when: "[A]ny person within the United States … make[s] any call … using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Therefore, for Plaintiff to allege a cause of action under section 227(b)(1) of the TCPA, she "must allege that the defendant (1) called a cellular telephone number; (2) used an automatic telephone dialing system … to do so; and (3) lacked the plaintiff's prior express consent." *Aquilar v. Ocwen Loan Servicing, LLC*, 289 F. Supp. 3d 1000, 1005 (D. Minn. 2018). Should Plaintiff fail to properly plead any of those elements, she would fail to state a claim upon which relief can be granted under Rule 12(b)(6). *See id.* at 1005-06.

Throughout the Complaint, Plaintiff makes conclusory allegations, such as "WinRed places text message using an ATDS[,]" or, in discussing a disclaimer on a website, "[t]his language clarifies that WinRed is directly involved in soliciting contributions." [Dkt. 1 at. ¶¶ 22-23]. There is nothing within the language of the complained of messages that implicates WRTS in the sending of any messages. *See* [Dkt. 1 at ¶16]. Additionally, the fact that a disclaimer exists on a donation website says absolutely nothing regarding WRTS's alleged involvement in sending any text messages

to Plaintiff. Plaintiff relies on conclusory allegations and then asks the Court to draw favorable inferences from those conclusory allegations regarding WRTS's involvement in sending the text messages in question. The law requires more, and the allegations against WRTS fall well short of the required federal pleading standards. *Id.* Therefore, the claims against WRTS should be dismissed under Rule 12(b)(6). *See Tracht Gut, LLC, LLC*, 836 F.3d at 1150.

Additionally, of specific importance to analyzing Plaintiff's pleading failures is the defined term "automatic telephone dialing system." The TCPA defines an autodialer as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). At the motion to dismiss stage, a plaintiff must properly allege sufficient facts that, taken as true, could lead to the reasonable inference that WRTS used an ATDS. *See Iqbal*, 556 U.S. at 678. In this respect, Plaintiff has failed to "nudge[] [her] claim[] across the line from conceivable to plausible," and therefore the Complaint should be dismissed. *See Twombly*, 550 U.S. at 570.

The Complaint contains a few conclusory references with supposed allegations that Defendants used an autodialer. [Dkt. 1 at ¶¶ 10, 14-15, 19, 22]. First, paragraphs 10, 14, 19, and 22 state similar conclusory statements that WRTS, "on information and belief, [] placed [the alleged calls] using an ATDS." [Dkt. 1 at ¶19]. These are simply the naked assertions of an element of a TCPA violation, which are plainly insufficient to state a claim under *Twombly*, *Iqbal*, and their progeny. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

Second, paragraph 15 states: "[t]he impersonal and generic nature of the messages

as well as the frequency of the messages and the lack of consent are all indicative of the use of an ATDS." [Dkt. 1 at ¶ 15]. This threadbare allegation is fundamentally deficient in that: (1) nature and frequency of a message are not indicative of whether an autodialer is in use, and thus are not relevant under the TCPA; (2) even if the nature and frequency of a message were indicative of an ATDS, there are no allegations as to what specifically regarding the nature or frequency of the messages were indicative of an ATDS, therefore it is impossible to connect the allegation to WRTS; and (3) there is no nexus between the alleged texts and WRTS.

> 1. *The Nature or Frequency of a Message Is Not Indicative of an ATDS.*

The standard mandated by *Iqbal* declares that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see, e.g.*, *Landers v. Quality Communs., Inc.*, 771 F.3d 638 (9th Cir. 2015). Nothing alleged in the Complaint—that is not itself a legal conclusion—indicates the presence of an ATDS, or that any automated system was used to make calls by WRTS.

The TCPA is wholly silent on the subject of *the nature and frequency* of a message sent from an alleged autodialer. *See generally* 47 U.S.C. § 227. Plaintiff's allegation that the nature or frequency of a message is "indicative" of ATDS technology is therefore unsupportable on the face of the Complaint. Courts have dismissed claims based on the allegation that the incoming text messages were "generic and impersonal" which were insufficient to make the claims plausible because "[i]t [wa]s just as

conceivable that the text messages were done by hand, or not using an ATDS." *Friedman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 U.S. Dist. LEXIS 84250, at *6-7 (S.D. Cal. Jun. 13, 2013).

Several additional courts have dismissed TCPA claims for failure to properly allege the use of an ATDS when the allegation of the use of an ATDS was based, at least in part, on situations that were "indicative" of ATDS technology. *See, e.g.*, *Margulis v. Generation Life Ins. Co.*, 91 F. Supp. 3d 1165, 1166, 1168 (E.D. Mo. 2015) (finding that plaintiff's "vague allegations" including the allegation that the system was an ATDS because there was a "delay after answering and before hearing anyone speak" were "essentially threadbare legal conclusions"); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H (WVG), 2012 U.S. Dist. LEXIS 91030, at *9 (S.D. Cal. Jun. 18, 2012) (dismissing plaintiffs' complaint because they failed to properly allege the defendants used an ATDS).

        2. *There is No Nexus Between the Nature or Frequency of the Messages and WRTS's Alleged Conduct.*

Even if one assumes that the nature or frequency of a message is indicative of an ATDS, there is nothing in the Complaint that, taken as true, ties the automated response to WRTS's alleged conduct. Plaintiff alleges that "[t]he impersonal and generic nature of the messages" are indicative of the use of an ATDS. [Dkt. 1 ¶ 15]. However, there is no nexus between the content and frequency of the message that is tied to WRTS. In other words, even accepting Plaintiff's conclusory assertions as true, and further accepting that the nature or frequency of a message is indicative of an ATDS, there is still nothing on

the face of Complaint to link the nature or frequency of the message to WRTS.

### 3. *There is No Nexus Between the Text Messages and WRTS.*

There is nothing in the text messages themselves that would lead anyone to identify WRTS as a party responsible for sending text messages to solicit donations on behalf of a political committee. [Dkt. 1 at ¶¶ 14, 16]. In fact, Plaintiff contradicts herself on this point. One of the few factual allegations specific to WRTS states that "WinRed is a fundraising technology service that boasts of providing the number one online fundraising platform for the Republican Party and conservative groups. WinRed allows donors from across the country to easily connect with and support causes and candidates that they support." [Dkt. 1 at ¶ 7]. Even if one accepts that statement as true, there is nothing in "providing the number one online fundraising platform" that is indicative of making solicitations or sending political messages via phone or text or using ATDS technology.

Nothing in the language of the alleged text messages themselves identifies WRTS. When clicking on the web links discussed in the Complaint, there is a disclaimer provided by WinRed, PAC.[3] However, even assuming the website belongs to WRTS—which it does not—there is nothing indicative of making calls or using ATDS technology in owning or providing a platform for accepting donations. This, in conjunction with the other deficiencies in the Complaint, is insufficient as a matter of law under the pleading standards articulated in *Twombly* and *Iqbal*.

---

[3] WinRed, PAC is a separate and distinct entity from WRTS. *See* Exhibit A at ¶¶ 5-6, 24.

Therefore, due to Plaintiff's significant pleading deficiencies, she has failed to state a claim under the TCPA.

### III. IN THE ALTERNATIVE, THIS LITIGATION SHOULD BE STAYED PENDING THE SUPREME COURT'S DECISION IN *FACEBOOK, INC. V. DUGUID.*

Plaintiff's claims are insufficient to survive a motion to dismiss for the reasons stated above. However, should the Court disagree, WRTS requests that the Court stay this matter pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511. The primary issue presented in Facebook regarding the definition of ATDS in the TCPA will likely resolve a controlling question of law in this case—i.e., the definition of ATDS—as such, a stay of proceedings pending the Court's decision is appropriate.

"A district court has discretionary power to stay proceedings in its own court." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). "The Court must weigh competing interests affected by a grant or denial of a stay, including (1) the possible damage caused by a stay, (2) the hardship to the parties if the suit is allowed to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues from a stay." *In re Sprouts Farmers Mkt.*, No. MDL 16-02731-PHX DLR, 2017 U.S. Dist. LEXIS 80323, at *4-5 (D. Ariz. May 24, 2017) (citing *Lockyer*, 398 F.3d at 1110). The Court may also consider whether it is "efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir.

1979). *Facebook, Inc. v. Duguid*, a matter on appeal from the Ninth Circuit Court of Appeals, is currently pending before the Supreme Court of the United States. *Facebook, Inc. v. Duguid*, No. 19-511(U.S.). The only question that will be decided in this matter is "[w]hether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Id.*, Grant of Cert. There currently exists a circuit split with the Ninth and Second Circuits adopting a more expansive definition of an ATDS compared with the narrower definitions adopted in the D.C., Third, Seventh, and Eleventh Circuits. *Id.*, Supp. Br. of Pet. p.1. As the decision in *Facebook* could be dispositive of this matter, it is in the best interests of the parties to stay this matter pending the outcome of *Facebook* in the Supreme Court. *See Am. Life Ins. Co.*, 300 U.S. at 215.

Most courts that have been presented with the application of *Facebook* to TCPA claims have granted a stay pending the outcome of *Facebook,* while a handful of courts have denied similar motions. *See e.g.*, *Whattoff-Hall v. Portfolio Recovery Assocs., LLC,* No. 3:19-cv-02267-CAB-MSB, 2020 U.S. Dist. LEXIS 130375 (S.D. Cal. Jul. 23, 2020) (granted stipulated motion); *Blower v. Portfolio Recovery Assocs., LLC*, No. 19-cv-02270-BAS-LL, 2020 U.S. Dist. LEXIS 130505 (S.D. Cal. Jul. 23, 2020) (stipulated motion); *Hartranft v. Encore Capital Grp., Inc.*, No. 18-cv-1187-BEN (RBB), 2020 U.S. Dist. LEXIS 135309 (S.D. Cal. Jul. 30, 2020) (granting Plaintiff's motion to stay); *In re Portfolio Recovery Assocs., LLC, Tel. Consumer Prot. Act Litig.*, No. 11md02295 JAH - BGS, 2020 U.S. Dist. LEXIS 132312 (S.D. Cal. Jul. 27, 2020) (granting unopposed

motion to stay); *Hoagland v. Axos Bank*, No. 19-cv-00750-BAS-DEB, 2020 U.S. Dist. LEXIS 132831 (S.D. Cal. Jul. 27, 2020) (granting joint motion to stay); *But see e.g. Komaiko v. Baker Techs., Inc.,* No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 143953 (N.D. Cal. Aug. 11, 2020) (denying motion to stay).

### A. Plaintiff Will Not Be Harmed If The Litigation Is Stayed.

"This Circuit has made clear that monetary recovery cannot serve as the foundation to deny a stay." *In re Sprouts Farmers Mkt.*, 2017 U.S. Dist. LEXIS 80323, at *4-5 (citing *Lockyer*, 398 F.3d at 1110). Like the plaintiffs in *Sprouts Farmers Market*, Plaintiff will likely argue that she seeks "more than just an award of damages" and could possibly "suffer some continuing harm as a result of a stay." *In re Sprouts Farmers Mkt.*, 2017 U.S. Dist. LEXIS 80323, at *5-6. However, Plaintiff cannot show that she "will suffer irreparable damage and a miscarriage of justice" if the case were to be stayed. *Id.* (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). It is important to note that Plaintiff has not moved for any preliminary injunctive relief, therefore a stay of a few months pending the *Facebook* decision would do little to change Plaintiff's status quo. Because the decision in *Facebook* will be made "within a reasonable time in relation to the urgency of the claims presented to the Court," (*Leyva*, 593 F.2d at 864), this factor weighs in favor of staying the litigation should the Court reject WRTS's arguments in favor of dismissal.

### B. WRTS Will Suffer Hardship Absent A Stay.

There can be no reasonable dispute that the Supreme Court's decision in *Facebook* is central to the issue presented in this case. *See In re Sprouts Farmers Mkt.*, 2017 U.S.

Dist. LEXIS 80323, at *7-8. Although WRTS never sent a message of any kind to Plaintiff, WRTS could still be forced to defend what could amount to large class action litigation that might be rendered moot and unnecessary by the Supreme Court's decision in *Facebook*. Given the gravity of the harm that could befall WRTS in being forced to proceed with discovery, etc., the possible hardship to WRTS weighs heavily in favor of a stay.

### C. The Orderly Course of Justice and Interests of Judicial Economy Counsels in Favor of a Stay.

The issues before the Supreme Court in *Facebook* could be dispositive of this litigation. At the very least, the issues decided in *Facebook* will be central to the parties' claims and defenses here. It can hardly be understated that the risk of wasting party and judicial resources is great when some, if not all, of discovery, class certification, summary judgment, and trial may need to be re-litigated in their entirety. Forcing the parties and the Court to undertake an endeavor which, in all likelihood, will prove fruitless, is an extraordinary waste of time and resources.

### CONCLUSION

For the aforementioned reasons, this Court should dismiss Plaintiff's Complaint for lack of the Court's subject matter jurisdiction and for failure to state a claim. In the alternative, the Court should stay this litigation pending the Supreme Court's decision in *Facebook*.

DATED this 17th day of August, 2020.

*/s/ Zach R. Fort*
Zach R. Fort (#031643)
63 West Buena Vista Drive
Tempe, Arizona 85284

Jason Torchinsky (VSB 47481)*
Jonathan P. Lienhard (VSB 41648)*
Dallin B. Holt (TX 24099466)*
HOLTZMAN VOGEL JOSEFIAK TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186

* *Admitted Pro Hac Vice*

*Attorneys for Defendant WinRed Technical Services, LLC*

**NOTICE OF CERTIFICATION OF CONFERRAL**

Pursuant to LRCiv 12.1(c) and this Court's Order dated June 24, 2020 [Dkt. 6], WinRed Technical Services, LLC, certifies that counsel for WRTS, and counsel for Plaintiff, conferred telephonically on August 6, 2020, and further conferred, in writing, on August 11, 2020. Counsel for the parties discussed WRTS's intention to file this motion to dismiss, and the substantive legal arguments to be presented by WRTS in this motion. However, the parties were unable to agree that the Complaint [Dkt. 1] is curable by a permissible amendment.

/s/ *Zach R. Fort*
Zach R. Fort (#031643)
63 West Buena Vista Drive
Tempe, Arizona 85284

Jason Torchinsky (VSB 47481)*
Jonathan P. Lienhard (VSB 41648)*
Dallin B. Holt (TX 24099466)*
HOLTZMAN VOGEL JOSEFIAK
TORCHINSKY PLLC
45 N. Hill Drive, Suite 100
Warrenton, VA 20186

* *Admitted Pro Hac Vice*

*Attorneys for Defendant WinRed Technical Services, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Zach R. Fort*