# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated<br><br>                  Plaintiff(s),<br><br>v.<br><br>WinRed Technical Services, LLC, et al.<br><br>                  Defendants. | Case No. 3:20-cv-08150-PCT-JJT<br><br>**DECLARATION OF GERRIT LANSING ON BEHALF OF WINRED TECHNICAL SERVICES, LLC.** |

Comes Now Gerrit Lansing, President of WinRed Technical Services, LLC ("WRTS"), and states as follows:

1.      I am the President of WRTS, which is a Virginia limited liability company.  I am authorized to make these statements on behalf of the Company.

2.      I make the statements below based on my personal knowledge, information, and belief.

3.      I have reviewed Plaintiff's Complaint and am familiar with the contents therein.

4.      WRTS is a technology vendor that creates the websites and related infrastructure to accept contributions to various political committees. WRTS created the website and provided the infrastructure for the website referenced in Paragraphs 20-23 of the Complaint.

5.      WinRed, Inc. (the "PAC"), which is a non-connected political action committee registered with the Federal Election Commission ("FEC"), is the entity that receives the incoming "earmarked" donations. An "earmarked" donation is simply a donation for a specific political committee that cannot be sent anywhere else. Pursuant to FEC rules, once the PAC receives an

earmarked contribution that contribution *must* be sent to the designated political committee. The PAC has no discretion over the timing, recipient, or amount of earmarked contributions.

6.     While WRTS and the PAC share "WinRed" in their name, they are each separately incorporated entities.

7.     Neither WRTS nor the PAC are peer-to-peer ("P2P") vendors, nor do they use P2P vendors, nor do they contract with P2P vendors.

8.     A P2P texting provider is a company that uses software to contact people via text message in order to, among other things, solicit donations in a way that is specifically designed and intended to be compliant with the TCPA. The key feature of a modern P2P system is that it only sends a text message after a person manually calls the number to be texted. The FCC has recently released a declaratory ruling to this effect. *See* P2P Alliance, FCC 2020 TCPA Declaratory Ruling, CG Docket No. 20-670  (attached herein as Exhibit A).

9.     Neither WRTS nor the PAC contracts with any company, person, or entity to make calls or texts to solicit donations from the public or to send political messages to the public.

10.     The PAC is a client of WRTS, *i.e.* WRTS created the website and provides the online payment infrastructure for the PAC and processes the payments to the PAC. The PAC, in turn, hosts the website and sends the donations to the recipient political committee.

11.     WRTS is not a political committee or political organization. WRTS does not, and has never, received a donation from any individual. All earmarked contributions to federal campaign committees—like those at issue here—are received by and subsequently disbursed from the PAC.

12.     WRTS provides the "back end" services that the PAC uses to collect contributions for certain political committees, including the National Republican Senatorial Committee

("NRSC"), and to transmit those contributions to the recipient political committees in accordance with FEC rules and regulations.  For its services, WRTS receives a small fee from the committee, which is calculated as a small percentage of the contributions made through the PAC.

13.    Based on personal knowledge, information, and belief, the following generally summarizes the website creation, contribution, and fundraising process:

- A political committee contracts with WRTS to set up a website for the committee according to the committee's specifications;

- WRTS then creates the website according to the specifications pursuant to the agreement between WRTS and the political committee;

- The P2P vendor—which is a contractor of the political committee—sends texts on the political committee's behalf;

- A potential contributor receives a text and then, should they choose to do so, clicks a link in the text in order to donate;

- The link directs the potential contributor to the website created by WRTS and the recipient political committee;

- The contributor then enters the information requested on the website and contributes the amount she chooses to the recipient political committee;

- The contribution (so long as it is a contribution to a federal committee) goes to the PAC;

- The contribution then passes through the PAC and is distributed to the political committee within 10 days. This process is typically much faster than 10 days and in many cases happens instantly.

14.    Therefore, as outlined herein, WRTS has no involvement with sending, or causing to be sent, the text messages at issue in this case.

15.    WRTS does not solicit donations by any means, including by phone or text message. WRTS has never solicited any donations from any person by any means, including phone or text message.

16.     WRTS does not pay for or authorize any individual or entity to send text messages to solicit donations.

17.     WRTS does not participate in creating any text messages on behalf of any political committee or determining where or to whom any such messages would be sent.

18.     WRTS does not participate in any decision to use text messages to promote any political message through the platform or to solicit donations through the platform.

19.     WRTS has never made any calls or texts or caused any calls or texts to be made to any person using any system specially created to solicit donations.

20.     WRTS has not and does not send text messages or make phone calls *en mass*.

21.     WRTS has never called or texted, nor has it caused to be called or texted, Plaintiff.

22.     All contributions solicited from individuals that then pass through the WRTS platform are the result of actions by the committees who use the platform.

23.     The website where individuals are directed to submit donations is maintained by the PAC.

24.     I have visited the website that is discussed in Paragraphs 20-23 of the Complaint. I am aware that there exists a disclaimer at the bottom of the linked page which states, among other things, that the page was "Paid for by WinRed. Not authorized by any candidate or candidate's committee.   WinRed.com."   *See*   https://secure.winred.com/stevescalise/january-eom/?amount=35&utm_medium=p2p&utm_source=TM1&utm_campaign=20200217_TM1_Final-Chance-Ext-EOM. This disclaimer is for the PAC and not WRTS.

25.     To reiterate, WRTS is a technology vendor that creates websites and electronic payment platforms. WRTS has never contacted Plaintiff by call or text message, has never instructed anyone to contact Plaintiff by call or text message, has never caused anyone to contact

Plaintiff by call or text message, and has never paid for anyone to contact Plaintiff by call or text message.

      Further Affiant sayeth naught.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 17th day of August 2020.

_____

By:  Gerrit Lansing
President, WinRed Technical Services, LLC.

EXHIBIT A

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | **)** | |
| | **)** | |
| Rules and Regulations Implementing the | **)** | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | **)** | |
| | **)** | |
| P2P Alliance Petition for Clarification | **)** | |

**DECLARATORY RULING**

**Adopted:  June 25, 2020**                             **Released: June 25, 2020**

By the Chief, Consumer and Governmental Affairs Bureau:

## I.   INTRODUCTION

1.   The Telephone Consumer Protection Act (TCPA) prohibits any person from calling or text messaging someone else on a wireless phone using an automatic telephone dialing system (an "autodialer") or an artificial or prerecorded voice unless it is an emergency or they have the called party's prior express consent.[1]  The TCPA defines an autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[2]

2.   In 2018, the P2P Alliance, a coalition of providers and users of peer-to-peer (P2P) text messaging services for schools, non-profits, and other groups filed a petition for clarification asking the Commission to clarify that texts sent via a particular type of peer-to-peer messaging platforms are not subject to the TCPA's restrictions.[3]  The P2P Alliance describes the relevant text messaging platforms as ones that enable two-way text communication, require a person to manually send each text message one

---

[1] The Telephone Consumer Protection Act (TCPA) is codified at section 227 of the Communications Act of 1934, as amended.  *See* 47 U.S.C. § 227.

[2] *See* 47 U.S.C. § 227(a)(1).  The details of the Commission's interpretation of the autodialer definition remain pending in the wake of a 2018 decision of the U.S. Court of Appeals for the D.C. Circuit in *ACA International v. FCC*, that vacated parts of the Commission's *2015 TCPA Declaratory Ruling and Order*.  *See ACA Int'l et al. v. FCC*, 885 F.3d 687, 695-700 (D.C. Cir. 2018) (*ACA Int'l*) (affirming in part and vacating in part *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961 (2015) (*2015 TCPA Declaratory Ruling and Order*)).  The Bureau sought renewed comment on the definition of an "autodialer."  *See Consumer and Governmental Affairs Bureau Seeks Comments on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, CG Docket Nos. 18-152 and 02-278, Public Notice, 33 FCC Rcd 4864 (2018) (*ACA Public Notice*).  Until that issue is decided by the Commission, we rely on the statutory definition of autodialer.

[3] *See Petition for Clarification of the P2P Alliance*, CG Docket No. 02-278 at 1 (filed May 3, 2018) (*P2P Alliance Petition*).

at a time, and enable the sender to exercise discretion regarding the content and other features of the text messages.[4]

3. By this Declaratory Ruling, we clarify that the fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not probative of whether that equipment constitutes an autodialer under the TCPA. Instead, we make clear that if a calling platform is not capable of originating a call or sending a text without a person actively and affirmatively manually dialing each one, that platform is not an autodialer and calls or texts made using it are not subject to the TCPA's restrictions on calls and texts to wireless phones. We further confirm that, even when a party uses an autodialer to send a message, it may still avoid TCPA liability by obtaining the recipient's prior express consent.

## II.    BACKGROUND

4. Congress enacted the TCPA to address certain calling practices that invade consumer privacy and threaten public safety. The TCPA and the Commission's rules prohibit autodialed, prerecorded, or artificial voice calls to wireless telephone numbers without the prior express consent of the called party, unless the call is an emergency or one of a small number of other exceptions applies.[5] The TCPA defines an autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[6] The same restrictions apply to text messages sent using an autodialer.[7] In 2016, the FCC issued an Enforcement Advisory regarding the agency's TCPA robocall and text rules, which included an attachment addressing frequently asked questions (FAQ).[8] The FAQ stated that "only manually placed text messages are permissible without prior express consent."[9]

5. In 2018, the P2P Alliance, a coalition of providers and users of peer-to-peer text messaging, asked whether its messaging is subject to the TCPA's restrictions on calls to wireless numbers.[10] The P2P Alliance states that its text messages do not involve use of autodialers as defined in the TCPA. Specifically, it states that the P2P platform "does not include 'the capacity to . . . store or produce telephone numbers to be called, using a random or sequential number generator.'"[11] According to the P2P Alliance, the platform "requires a person to actively and affirmatively manually dial each recipient's number and transmit each message one at a time."[12] The P2P Alliance also states that the individual

---

[4] *See* Letter from Howard Waltzman, Counsel to the P2P Alliance, to Marlene Dortch, Secretary, FCC, CG Docket No. 02-278 (filed July 30, 2019) (*P2P Alliance Ex Parte*).

[5] *See* 47 U.S.C. § 227(b)(1). Section 227(b)(1) also exempts from this restriction calls made solely to collect a debt owed to or guaranteed by the federal government.

[6] *See* 47 U.S.C. § 227(a)(1).

[7] *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115, para. 165 (2003) (*2003 TCPA Order*); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

[8] FCC Enforcement Advisory No. 2016-03, DA 16-264 (Mar. 14, 2016) (*2016 Enforcement Advisory and FAQ*).

[9] *Id.*

[10] *See generally P2P Alliance Petition*.

[11] *Id.* at 4.

[12] *Id.*

sending a P2P text can choose to send a message from a prepared script, to modify the script before sending the text, or to draft their own unique message.[13]

6.   The P2P Alliance further argues that recipients of non-political text messages using the P2P texting technology have "indicated [their] consent to receive such messages by providing a contact number to which such messages are delivered."[14]  It states that text messages sent using P2P technology "are precisely the type that Congress intended the TCPA to permit and encourage: communications between a sender and a recipient with a previous relationship, where the recipient has indicated his or her consent to receive such messages by providing a contact number to which P2P Alliance messages are delivered."[15]

7.   The Consumer and Governmental Affairs Bureau (Bureau) sought comment on the request.[16] Members of the P2P Alliance as well as the National Association for the Advancement of Colored People, the National Association for Equal Opportunity in Higher Education, the National Black Justice Coalition, and Vote.Org supported the petition.[17]  One individual commenter opposed the petition, noting that peer-to-peer text messaging enables users to send a high volume of texts that may be unwanted.[18] The National Consumer Law Center (NCLC) and other consumer groups also opposed the petition, arguing (among other things) that the record lacks sufficient technical information to determine whether the texting involves use of autodialer equipment, and the fact that P2P platforms are used to "send[] massive numbers of texts in tiny periods of time" indicates that "the individual involvement in sending these messages is so vanishingly small as to be meaningless" and thus that the platforms meet the definition of an autodialer.[19]

## III.   DISCUSSION

8.   We clarify that the fact that a calling platform or other equipment is used to make calls or send texts to a large volume of telephone numbers is not determinative of whether that equipment constitutes an autodialer under the TCPA.  Instead, whether the calling platform or equipment is an autodialer turns on whether such equipment is capable of dialing random or sequential telephone numbers without human intervention.  If a calling platform is not capable of dialing such numbers without a person actively and affirmatively manually dialing each one, that platform is not an autodialer and calls made using it are not subject to the TCPA's restrictions on calls to wireless phones.  To the extent the P2P texting platform advocated by the P2P Alliance is not capable of making calls or sending texts without a person actively and affirmatively manually dialing each number, it is not an autodialer as defined by the TCPA, and thus we grant P2P Alliance's petition to that extent.  Additionally, to the extent members of the P2P Alliance have obtained the called party's prior express consent, their calls are not subject to

---

[13] *Id.* at 2.

[14] *Id*. at 3.

[15] *Id*. at 5-6 ("P2P text messaging pertaining to non-political purposes are sent only after a prior relationship or prior consent exists.").

[16] *See Consumer and Governmental Affairs Bureau Seeks Comment on P2P Alliance Petition for Clarification Under the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Public Notice, 33 FCC Rcd 5037 (2018).

[17] *See, e.g.*, NAACP Comments at 1-2; NAFEO Comments at 1; NBJC Comments at 1; Vote.org Comments at 2.

[18] *See* Matt Tucker Comments.

[19] *See* Letter from Margot Saunders, Senior Counsel, National Consumer Law Center et al., to Marlene Dortch, Secretary, FCC, CG Docket No. 02-278 (filed July 12, 2019) (NCLC et al. *Ex Parte*).

TCPA liability even if they use an autodialer.

9.   Under the terms of the TCPA, only technology that has the capacity to store or produce numbers to be called using a random or sequential number generator, and to dial such numbers, is deemed to be an autodialer.[20]  Whether a certain piece of equipment or platform is an autodialer turns on whether it is capable of performing those functions without human intervention, not whether it can make a large number of calls in a short time.  Thus, in its original TCPA proceeding, the Commission found that "the prohibitions of [section] 227(b)(1) clearly do not apply to functions such as 'speed dialing,'" because the numbers are not generated in a random or sequential fashion.[21]  The Commission also has long held that the basic function of an autodialer is to "dial numbers without human intervention."[22]  As the FCC's *2016 Enforcement Advisory and FAQ* made clear, "manually placed text messages are permissible without prior express consent."[23]

10.   The P2P Alliance states that its "text messaging does not involve the use of equipment that constitutes an automatic telephone dialing system ('autodialer') as such term is defined by the TCPA, nor are P2P messages made using an autodialer."[24]  As described by the P2P Alliance, peer-to-peer text messaging is a communications technology that allows organizations to use either an online platform or a mobile application to send text messages to recipients from a single sender to a single recipient to initiate a two-way communication.[25]  The P2P Alliance states that the platform does not include "the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator."[26]

11.   We do not rule on whether any particular P2P text platform is an autodialer because the record lacks a sufficient factual basis for us to confirm (or for commenters to assess) whether any particular P2P text platform actually works as claimed in the *P2P Alliance Petition*.  We clarify, however, that if a texting platform actually "requires a person to actively and affirmatively manually dial each recipient's number and transmit each message one at a time" and lacks the capacity to transmit more than one message without a human manually dialing each recipient's number, as suggested in the *P2P Alliance Petition*, then such platform would not be an "autodialer" that is subject to the TCPA.

12.   We disagree with NCLC's contention that the TCPA's restrictions should apply to P2P systems because otherwise "telemarketers and spammers would immediately gravitate to P2P systems as a way to evade the TCPA's restrictions on unwanted calls."[27]  The TCPA does not and was not intended to stop every type of call.  Rather, it was limited only to calls made using an autodialer or an artificial or prerecorded voice.  If a text platform is not capable of storing or producing numbers to be called using a random or sequential number generator and dialing such numbers automatically but instead requires

[20] 47 U.S.C. § 227(b)(1).

[21] *Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8776, para. 47 (1992) (*1992 TCPA Order*).

[22] *See 2003 TCPA Order*, 18 FCC Rcd at 14092, para. 132.

[23] *2016 Enforcement Advisory and FAQ*.

[24] *See P2P Alliance Petition* at 3.

[25] *Id.* at 1-2.

[26] *Id.* (citing 47 U.S.C. § 227(b)(1)(A)); *see also* RNC Comments at 6; BAC Comments at 1; NBJC Comments at 1, Vote.org Comments at 2, Chapman Comments at 1, Fearless Comments at 1, 60 Plus Comments at 2, NAFEO Comments at 1, NAACP Comments at 2.

[27] NCLC et al. *Ex Parte* at 2.

4

active and affirmative manual dialing, it is not an autodialer and callers using it are, by definition, not "evading" the TCPA.

13. Finally, we reiterate that, even to the extent that calls are made using an autodialer, the TCPA's restrictions do not apply if the caller or texter obtains the recipient's prior express consent.[28]  The P2P Alliance asserts that certain peer-to-peer text messages are sent only with prior consent because the texted party has provided a contact number to which such messages are delivered.[29]  The Commission has repeatedly made clear that "persons who knowingly release their telephone numbers" for a particular purpose "have in effect given their invitation or permission to be called at the number which they have given" for that purpose, absent instructions to the contrary.[30]  To the extent P2P calls are made to parties that have knowingly released their telephone number to the caller for a particular purpose, then calls within the scope of that consent do not run afoul of the TCPA regardless of whether the caller used an autodialer.[31]

## IV.   ORDERING CLAUSES

14. For the reasons stated above, IT IS ORDERED, pursuant to sections 1-4 and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, sections 1.2 and 64.1200 of the Commission's Rules, 47 CFR §§ 1.2, 64.1200, and the authority delegated in sections 0.141 and 0.361 of the Commission's rules, 47 CFR §§ 0.141, 0.361, that the Petition for Clarification filed by the P2P Alliance on May 3, 2018, IS GRANTED TO THE EXTENT DESCRIBED HEREIN.

---

[28] *See* 47 U.S.C. § 227(b)(1); 47 CFR § 64.1200(a).

[29] *See P2P Alliance Petition* at 5-6; *see also* Vote.org Comments at 2; VON Comments at 2; NAFEO Comments at 2; NAACP Comments at 2.

[30] *1992 TCPA Order*, 7 FCC Rcd at 8769, para. 31.  In the *ACA Declaratory Ruling*, for example, the Commission clarified that a party who provides his or her wireless number to a creditor as part of a credit application "reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd 559, 564, para. 9 (2008) (*ACA Declaratory Ruling*).  In the case of health care providers and schools, the Commission found that the provision of a phone number constitutes prior express consent if the covered entities are making calls within the scope of the consent given, and absent instructions to the contrary.  *See 2015 TCPA Declaratory Ruling and Order*, 30 FCC Rcd at 8028, para. 141 & n.474 (clarifying that "within the scope of consent given, and absent instructions to the contrary," means "that the call must be closely related to the purpose for which the telephone number was originally provided"); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Blackboard, Inc. Petition for Expedited Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 31 FCC Rcd 9054, 9064, para. 23 (2016) (confirming that when a parent or student provides their wireless number as a contact to a school, the scope of consent includes communications from the school closely related to the educational mission of the school or to official school activities absent instructions to the contrary from the party who provides the phone number); *see also Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, GroupMe, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling,* CG Docket No. 02-278, 29 FCC Rcd 3442, 3447, para. 14 (2014) ("[W]e confirm that a caller remains liable for TCPA violations when it relies upon the assertion of an intermediary that the consumer has given such prior express consent.  We emphasize that the intermediary may only convey consent that has actually been provided by the consumer; the intermediary cannot provide consent on behalf of the consumer.").

[31] Although P2P Alliance asserts that text messages sent for political purposes are not "telephone solicitations," the TCPA's prohibitions encompass calls and texts *even* if they do not contain a telephone solicitation.  *See* 47 U.S.C. § 227(b)(1)(A); *see also Telephone Consumer Protection Act Robocalls and Text Rules*; *Biennial Reminder for Political Campaigns About Robocalls and Text Abuse*, Enforcement Advisory, 31 FCC Rcd 1940 (2016).

15. IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release.

FEDERAL COMMUNICATIONS COMMISSION

Patrick Webre
Chief
Consumer and Governmental Affairs Bureau

**Federal Communications Commission**                    **DA 20-670**

**Appendix**

**List of Commenters**

| Commenters | Abbreviation |
|---|---|
| 60 Plus Association | 60 Plus |
| Bay Area Council | Bay Area |
| Chapman, Cubine, and Hussey | Chapman |
| Fearless Mobile Strategies | Fearless Mobile |
| National Black Justice Coalition | NBJC |
| National Association for the Advancement of Colored People | NAACP |
| National Association for Equal Opportunity in Higher Education | NAFEO |
| Republican National Committee | RNC |
| Matt Tucker | Matt Tucker |
| Voice on the Net Coalition | Voice on the Net Coalition |
| Vote.org | Vote.org |