Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WinRed Technical Services, LLC, a Delaware limited liability company, and National Republican Senatorial Committee, a District of Columbia non-profit organization,<br><br>Defendants. | Case No. 3:20-cv-08150-PCT-JJT<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S MOTION TO DISMISS OR STAY** |

## I.  INTRODUCTION

This case challenges Defendant National Republican Senatorial Committee's ("Defendant" or "NRSC") serial violations of the Telephone Consumer Protection Act ("TCPA"). Specifically, NRSC bombards consumers' cell phones with unsolicited, autodialed text messages without obtaining prior express consent. Yet rather than answer the Complaint—let alone accept responsibility—NRSC instead asks the Court to dismiss Plaintiff's claims against it or, in the alternative, stay this matter pending the Supreme Court's ruling in *Facebook Inc. v. Duguid*, No. 19-511 (U.S. July 9, 2020), a case concerning the definition of an automated telephone dialing system ("ATDS").

1

1  Defendant's arguments to dismiss fail, and a stay pending resolution of the *Duguid* case is
2  neither supported nor supportable. As such, and as explained further below, the Court
3  should deny NRSC's motion in its entirety.
4      Defendant's argument for dismissal is based on the erroneous belief that, because
5  the Supreme Court in *AAPC* found the TCPA's government-debt exception to be
6  unconstitutional, the entire autodialer ban was rendered unconstitutional, and no
7  telemarketers can be held liable for violating the TCPA from the date the exception was
8  enacted in 2015 until the date the Supreme Court severed the exception in 2020. The
9  argument is specious, and NRSC can only make it by ignoring the Supreme Court's
10 thorough analysis of severability within the *AAPC* decision itself. As agreed by the
11 majority of the Supreme Court, the government-debt exception—an unconstitutional
12 amendment made decades after the TCPA was enacted—did not otherwise invalidate the
13 TCPA's broader prohibition on robocalls. NRSC's unsolicited, autodialed telemarketing
14 conduct, as alleged by Plaintiff, has been plainly proscribed for almost thirty years.
15     Defendant's alternative motion to stay is similarly meritless. NRSC's assessment of
16 the *Duguid* case is flawed because, regardless of the definition of ATDS that the Supreme
17 Court may ultimately settle on, the true nature the dialing equipment that was used to send
18 messages to Plaintiff and the class must be learned through discovery. The *Landis* factors
19 for granting a stay do not favor NRSC's request, and Plaintiff would suffer prejudice if
20 discovery were delayed. Accordingly, the Court should deny Defendant's Motion to
21 Dismiss or Stay in its entirety.

22 **II.    SUMMARY OF THE CLAIMS**

23     Whittaker alleges that NRSC violated the TCPA by sending unsolicited, autodialed
24 text messages to her cellphone and to the cellphones of numerous other consumers, none
25 of whom gave prior express consent to receive such texts. (*See* Compl., dkt. 1 at ¶¶ 9–10,
26 36.) As will be proven at the appropriate time following classwide discovery, Plaintiff
27
28

seeks to certify a class action on behalf of all consumers who, like Plaintiff, received repeated unsolicited, autodialed text messages from Defendant. (*Id.* ¶ 27.) To redress NRSC's unlawful telemarketing conduct, Plaintiff seeks statutory damages for herself and the class, as well as injunctive relief requiring Defendant to cease its unauthorized autodialed text messaging activity. (*Id.* ¶ 26.)

## III.   ARGUMENT

### A.   Defendant's Motion To Dismiss Relies Upon Mischaracterization Of The Supreme Court's *AAPC* Decision.

To hear NRSC tell it, the Supreme Court's ruling in *AAPC* supposedly rendered the TCPA's entire autodialer ban unconstitutional, and NRSC "cannot be held liable for violating an unconstitutional law." (Mot. to Dismiss, Dkt. 13 at 6.) Of course, telemarketers like Defendant would appreciate being relieved of all liability for unlawful texts and calls made over the last five years. The problem with this argument is that it completely ignores the AAPC's decision and reasoning. That is, Justice Kavanaugh, in a portion of the *AAPC* opinion joined by six other Justices, pointedly determined that the offending exemption was severable from the TCPA's autodialer ban. The government-debt exception—not the autodialer ban itself—was found to be unconstitutional, and the 2015 amendment that added this exemption was effectively void when enacted. In other words, the severing of the government-debt exception as unconstitutional has no effect on the validity of the rest of the statute as it has stood since 1991. Hence, contrary to NRSC's hopeful assertions, the Supreme Court did not invalidate the entire TCPA and retroactively exempt all unlawful calls over the last five years. NRSC's motion to dismiss lacks merit.

On July 6, 2020, the Supreme Court issued its opinion in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020) [hereafter "*AAPC*"]. The case involved a constitutional challenge to the TCPA's government-debt exemption, which had been

enacted in 2015 to permit the use of unsolicited, autodialed calls to cell phones when attempting to collect on a government-backed debt. *Id.* at 2344–45. Justice Kavanaugh authored the judgment of the Court. *Id.* at 2343. On the issue of constitutionality, six Justices agreed that the government-debt exception was a content-based rule that "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.*

The Supreme Court then turned to the question of the proper remedy—specifically, whether to invalidate the entire robocall restriction as enacted in 1991 or to sever and invalidate only the government-debt exemption as added by amendment in 2015. *Id.* at 2348. Seven Justices concluded that the traditional remedy of severance was appropriate. *Id.* at 2343. Justice Kavanaugh explained that the Supreme Court has developed a "strong presumption of severability" that has been "firmly established since *Marbury v. Madison*," such that one unconstitutional section of a statute may be invalidated while the remaining statute may be given full effect. *Id.* at 2350–51. As a result, Justice Kavanaugh reasoned that severance of the government-debt exception was doubly supported because: (1) since 1934, the Communications Act has contained an express severability clause applicable to the chapter that houses the TCPA; and (2) even in the absence of a severability clause, the Court's presumption of severability would apply. *Id.* at 2352–53.

As to the effect of the amendment on the enforceability of the remainder of the statute, Justice Kavanaugh pointed out that "the remainder of the law is capable of functioning independently and thus would be fully operative"—indeed, it had been fully operative for more than twenty years before the offending exemption was added. *Id.* at 2353. The Supreme Court's historical treatment hints at the fact that the statute is enforceable notwithstanding an unconstitutional amendment:

> The Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law. In

4

> those cases, the Court has treated the original, pre-amendment statute as the "valid expression of the legislative intent." *Frost v. Corporation Comm'n of Okla.*, 278 U.S. 515, 526–527, 49 S.Ct. 235, 73 L.Ed. 483 (1929). The Court has severed the "exception introduced by amendment," so that "the original law stands without the amendatory exception." *Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 66 L.Ed. 254 (1921).
>
> . . .
>
> Echoing *Marbury*, the Court in *Frost* explained that an unconstitutional statutory amendment "is a nullity" and "void" when enacted, and for that reason has no effect on the original statute. 278 U.S., at 526–527, 49 S.Ct. 235.

*Id.* Consequently, Justice Kavanaugh reasoned that, while no one should be held liable for making government-debt calls during the five-year period of the exemption's effect, the Supreme Court's decision "does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355, n. 12.

Despite the Supreme Court's analysis, Defendant seeks to use the invalidated exemption as a means to escape liability for any unlawful robocalls that it made in the last five years. (Dkt. 13 at 6.) In support, NRSC cites to "longstanding precedent"—in essence, one case—that supposedly compels dismissal of Plaintiff's claim. (*Id.* at 6, 9.) The case in question is *Grayned v. City of Rockford*, 408 U.S. 104 (1972).[1] In *Grayned*, the Supreme Court briefly considered and found that a Rockford, Illinois anti-picketing ordinance was unconstitutional because it exempted picketing for labor disputes. *Id.* at 107. The Supreme Court noted in a footnote that it had to consider the facial constitutionality of the ordinance at the time of the plaintiff's arrest. *Id.* at 107 n.2.

---

[1] Defendant also cites to *Morales-Santana* for support, but only for the fact that *Grayned* was cited positively in a footnote. (*See* Dkt. 13 at 3, 7, 8) (citing *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017)).

5

1  Defendant describes *Grayned* as "materially indistinguishable from this case," but
2  NRSC's assessment is wildly off. First, *Grayned* concerned a plaintiff who was arrested
3  and convicted pursuant to an unconstitutional law. *Grayned*, 408 U.S. at 105–07. This is a
4  civil matter, and, according to the Supreme Court's recent and thorough analysis in *AAPC*,
5  the TCPA and its robocall prohibition are not unconstitutional. *See AAPC*, 140 S. Ct. at
6  2352–53. Second, the law in *Grayned* was not rendered unconstitutional by amendment—
7  it was, as enacted, unconstitutional, and the subsequent amendment to remove the
8  offending language did not change its initial unconstitutionality. *Grayned*, 408 U.S. at
9  107, n.2. By contrast, the TCPA was functional and entirely constitutional for more than
10 twenty years before a subsequent, unconstitutional amendment was made that was "a
11 nullity and void when enacted, and for that reason [had] no effect on the original statute."
12 *AAPC*, 140 S. Ct. at 2353 (quotations omitted). Finally, the issue of severability was not
13 even *mentioned* in *Grayned*. That the Rockford ordinance was revised after Grayned's
14 conviction is irrelevant; the case provides no analysis of the remedy applied by the
15 Supreme Court in *AAPC*, and it is simply not on point for the question of the TCPA's
16 enforceability. Instead, the *AAPC* decision includes a thorough, precedential examination
17 of severability and its effect on the remaining statute. *AAPC*, 140 S. Ct. at 2348–56.
18 Defendant has no basis to support its attempt to relieve itself of all liability.
19  As part of its argument, NRSC self-servingly attempts to dissect the Supreme
20 Court's footnote regarding retroactivity. In one paragraph, NRSC cites favorably to
21 Justice Kavanaugh's acknowledgement that parties should not be penalized for making
22 government-debt calls while the exemption was in place. (Dkt. 13 at 9.) In the next
23 paragraph, NRSC rejects the remainder of the footnote, referring to the "other side of the
24 ledger" as "unreasoned dicta" that is unpersuasive. (*Id.*) (citing *AAPC*, 140 S. Ct. at 2355,
25 n.12). By Defendant's reasoning, either everyone (including government debt collectors)
26 may be held to account for unlawful calls made since 2015 or no one can. This flawed
27
28

6

logic oversimplifies the retroactivity analysis and the difference in conduct between a telemarketer like NRSC and one who sought to collect on a government debt.

In general, retroactivity is implicated when a new statutory provision attaches new legal consequences to events that occurred before its enactment. *Hand v. ARB KC, LLC*, Case No. 4:19-cv-00108-NKL, 2019 WL 6497432, at *15 n.9 (W.D. Mo. Dec. 3, 2019) (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 269 (1994)). Here, because the government-debt exemption deemed such calls lawful for the last five years, the Supreme Court would have to retroactively outlaw activity that was performed under color of and in accordance with the law—this is why government-debt callers will not be penalized for robocalls that were previously excused from liability. On the other hand, for callers like NRSC, the placing of autodialed calls to consumers without consent has been unlawful for almost thirty years. The conduct alleged by Plaintiff in her Complaint was unlawful in 1991, it was unlawful after the amendment in 2015, and it remains unlawful now. Because "[s]everance of the government-debt collection provision does not attach 'new legal consequences' to Defendants' alleged activity," *Hand*, 2019 WL 6497432, at *15 n.9, NRSC cannot use the unconstitutionality of a severable, subsequent amendment to the TCPA as a means of evading the consequences of its actions.

As the Supreme Court noted, the TCPA's autodialer restriction "proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*." *AAPC*, 140 S. Ct. at 2348 (emphasis in original). If NRSC's position were accepted, all automated telemarketing over the last five years would be shielded from liability. This remedial approach was encouraged by Justice Gorsuch, who urged a decision that would provide injunctive relief to anyone who sought reprieve from liability for unlawful robocalls. But Justice Kavanaugh, in the portion of his opinion joined by six other Justices, roundly rejected this remedy:

> Justice Gorsuch's approach to this case would not solve the problem of

7

>harming strangers to this suit; it would just create a different and much bigger problem. His proposed remedy of injunctive relief, plus *stare decisis*, would in effect allow all robocalls to cell phones—notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones. That is not a judicially modest approach but is more of a wolf in sheep's clothing. That approach would disrespect the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted. Justice Gorsuch's remedy would end up harming a different and far larger set of strangers to this suit—the tens of millions of consumers who would be bombarded every day with nonstop robocalls notwithstanding Congress's clear prohibition of those robocalls.

*Id.* at 2356. NRSC is seeking the same blanket immunity that the Supreme Court refused to extend to AAPC. This Court should refuse to grant it.

Though the government-debt exception was unconstitutional, it was severable from the TCPA and had no effect on the constitutionality of the autodialer ban. Accordingly, Defendant may be held to account for any unlawful, autodialed telemarketing that it conducted from 2016 to the present. NRSC's motion to dismiss should be denied.

**B.     NRSC's Alternative Request To Stay Is Inappropriate Because A Ruling In *Duguid* Would Not Be "Dispositive" Of Plaintiff's Claim.**

As an alternative to dismissal, NRSC asks the Court to stay this case pending the Supreme Court's review of *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019). (Dkt. 13 at 9–13.) By Defendant's estimation, these proceedings would be delayed for up to ten months. (*Id.* at 11.) The Supreme Court's ruling could theoretically change the definition of an ATDS, but it will not affect the foundation of Plaintiff's claim—no matter what is decided, this case will require discovery regarding the dialing technology used by NRSC, and Defendant cannot credibly demand delay of that discovery. Likewise, a stay is

8

unsupported by the *Landis* factors—a ten-month delay would not support judicial efficiency and instead would prejudice Plaintiff's ability to obtain evidence. NRSC's alternative request to stay should be rejected, and the Court should permit this matter to proceed to discovery.

As NRSC outlines in its motion, at issue in *Duguid* is the definition of an ATDS. Following dismissal of Duguid's complaint for failing to adequately allege the use of an ATDS, the Ninth Circuit reversed and held that an ATDS could be found where the dialing technology is capable of storing numbers to be called and dialing such numbers automatically. *Duguid*, 926 F.3d at 1149–51. The Court rejected the notion that an ATDS must use a random or sequential number generator to store numbers. *Id.* The U.S. Supreme Court granted certiorari on July 9, 2020, for review of the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'

*See* Petitioner's Brief in *Facebook, Inc. v. Duguid, et al.*, Case No. 19-511, 2019 WL 5390116, at *ii (S. Ct. Oct. 17, 2019).

The Supreme Court will ultimately consider whether a dialer that does not use a "random or sequential number generator" may be considered an ATDS. While a decision in either direction could certainly impact TCPA litigation and the legal definition of an autodialer, it will not dispose of Plaintiff's claims or the requirement to demonstrate the use of an ATDS. Here, Plaintiff alleged in her complaint that Defendants used an ATDS, including "a random or sequential number generator." (Dkt. 1 at ¶ 37.) Thus, if the Court answers its question affirmatively, Plaintiff will no longer need evidence of a number generator to prove that Defendant used an ATDS. But regardless of the ruling in *Duguid*, Plaintiff must, through discovery, obtain evidence of the dialer that was actually used to send the text messages to herself and the class members—such evidence is in Defendant's

9

possession, and it will be required no matter what the Supreme Court decides. NRSC is seeking a stay that will only delay necessary and inevitable discovery. Indeed, considering a similar motion to stay in another TCPA case brought by Plaintiff, this Court reasoned that "regardless of the results in *Facebook* [*v. Duguid*]…[the defendant] will be required to engage in discovery." *Whittaker v. All Reverse Mortgage Inc.*, No. CV-20-08016-PCT-DLR, dkt. 26 at 2 (D. Ariz. July 17, 2020) (attached hereto as "Exhibit A"). The court denied the motion to stay because "discovery issues are not likely to be mooted and resources are not likely to be spared" by awaiting *Duguid*'s outcome to begin discovery that is necessary regardless. *Id.* The same is true in this case.

Nevertheless, NRSC claims that the requested stay is supported by the factors set forth in *Lockyer*—(1) the possible damage that may result from granting a stay; (2) the hardship or inequity that a party may suffer by going forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay," commonly referred to as judicial economy. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). These factors are rooted in the Supreme Court's acknowledgement in *Landis* that courts have inherent power to control their own dockets, including the power to stay. *Id.* at 1109; *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Any party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Though Defendant has identified the correct standard, its analysis is flawed—none of the factors favor a stay.

*Possible damage of granting stay*

First, NRSC asserts that a stay poses no risk of harm to Plaintiff because she "seeks statutory damages for past conduct." (Dkt. 13, at 11.) Of course, and as Defendant mentions in passing, Whittaker also seeks injunctive relief in her Complaint, which is

necessary to prevent NRSC from continuing its unlawful telemarketing practices. (Dkt. 1 at 11 (seeking "[a]n injunction requiring Defendant to cease all unsolicited autodialed text messaging activities"); *see also id.* at ¶ 26.) NRSC claims that the injunctive relief sought is not enough—that supposedly Plaintiff won't suffer any harm because she does not seek a preliminary injunction to prevent "irreparable damage and a miscarriage of justice." (Dkt. 13 at 11.) But this *Landis* factor broadly considers "possible damage" and potential prejudice to the case; the heightened standard required to support a preliminary injunction is not necessary to this analysis. Here, every month that this matter is delayed is another month for Defendant to continue its automated telemarketing campaign unchecked and exacerbate the harms at issue in the case. Though this may not represent "irreparable damage" to support a preliminary injunction (which Plaintiff does not seek), it does represent further damage that may be done to Plaintiff and the class members if the case is stayed.

In addition to potential harms associated with continued telemarketing, Plaintiff's ability to pursue this action would be harmed by a stay. Generally, a delay that results from a stay can harm Plaintiffs because it threatens the availability of evidence. *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,* 490 F.3d 718, 724 (9th Cir. 2007) (recognizing that "[d]elay inherently increases the risk that witnesses' memories will fade and evidence will become stale"). Because the case is in its early stages, Defendant is effectively asking to stay all discovery for nearly a year. If Plaintiff is unable to issue discovery or subpoenas to secure evidence possessed by Defendant and its agents, she will be prejudiced in her ability to support her claims for relief.

In short, Plaintiff will likely suffer harm if the case is stayed because she would be unable to even discover evidence material to her claims for ten months, during which time Defendant could continue its unlawful practices. This factor weighs against a stay.

*Hardship in proceeding*

Second, NRSC's prediction that it would suffer "substantial hardship" and an "extraordinary waste of time and money" in the absence of a stay is rooted in its erroneous assessment of the *Duguid* case and of Plaintiff's claims. (*See* Dkt. 13 at 12.) Defendant insists that the *Duguid* case would "resolve a dispositive issue" in this case, claiming that Plaintiff would be "precluded" from pursuing this action if the Supreme Court overturns the Ninth Circuit's decision. (*Id.*) This is simply not true. As explained above, Plaintiff has alleged the use of "a random or sequential number generator." (Dkt. 1 at ¶ 37.) If the Supreme Court upholds the *Duguid* decision, Plaintiff would no longer need specific evidence of a number generator to prove the use of an ATDS; if the decision is overturned, Plaintiff will need such evidence. In either event, regardless of the Supreme Court's decision, Plaintiff must obtain evidence of the dialing system that was actually used to send the allegedly unlawful text messages. The *Duguid* decision cannot and will not dispose of Plaintiff's case because she did not predicate her claim on allegations that NRSC's system merely dialed from a stored list. NRSC is seeking a stay that will only delay necessary and inevitable discovery—it will not suffer hardship in proceeding, aside from the ordinary expenses associated with litigation, which are certain and insufficient to justify postponing this matter for ten months. *See Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'") Thus, this factor does not favor granting the requested stay.

*Judicial economy*

Third, judicial economy would not be served by a stay. Once again, Defendant's arguments are premised on the mistaken belief that the *Duguid* decision "could foreclose Whittaker's claim" or otherwise resolve or moot issues in this case. (Dkt. 13 at 12.) In response to a similar request in *All Reverse Mortgage*, another TCPA case brought by Plaintiff, this Court found that a stay pending the Supreme Court's ruling in *Duguid* would not serve judicial economy:

12

> As the parties explain, the result in *Facebook* [*v. Duguid*] is likely to determine whether Defendant's systems constituted ATDS. However, assuming the Court were to stay the case, once the Supreme Court releases its decision defining ATDS, Plaintiff still would be entitled to conduct discovery into Defendant's systems to determine whether those systems met the ATDS definition. In fact, Defendant has not pointed to a single discovery issue that would be eliminated by a *Facebook* decision favorable to it . . . . Because discovery issues are not likely to be mooted and resources are not likely to be spared, considerations of judicial economy do not favor a stay.

(Ex. A at 2.) The same holds true here—NRSC cannot credibly suggest that the *Duguid* decision will moot any discovery issues because: (1) Plaintiff's allegations are not based solely on the use of a system that dials from a stored list of numbers; and (2) Plaintiff will require discovery into Defendant's dialing system regardless of what the Supreme Court decides.

In short, there is no support for staying this matter until the Supreme Court issues its ruling in *Duguid* and postponing all proceedings for the next ten months. This is not one of the "rare" instances where a party should be made to stand aside while a pertinent rule of law is decided. *Landis*, 299 U.S at 255. NRSC is asking that Plaintiff's case be postponed for nearly a year on the misguided belief that a change in the definition of an ATDS would "preclude" Whittaker's cause of action. Judicial economy would not be served by postponing this case. Further, given that Plaintiff would likely suffer harm in the form of evidence becoming unavailable if such a stay is granted, and that NRSC will not suffer any harm beside the inevitable cost of litigation, the requested stay is inappropriate. Defendant's alternative motion should be denied.

**IV.    CONCLUSION**

Defendant's motion should be denied in its entirety. The Supreme Court's recent

*AAPC* decision found only the government-debt exemption—not the entire autodialer ban—to be unconstitutional, and the exception was severable from the TCPA. Accordingly, telemarketers may still be held liable for TCPA violations that occurred in the past five years. Further, in regards to NRSC's alternative request to stay the case, the Supreme Court's upcoming review of the ATDS definition in *Duguid* will not be dispositive of Plaintiff's claim, and the *Landis* factors do not support staying inevitable discovery and proceedings in this matter for ten months. Accordingly, the Court should deny the motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

Respectfully submitted,

Dated: September 21, 2020

**BRENDA WHITTAKER**, individually and on behalf of all others similarly situated,

By: /s/ Patrick H. Peluso

Penny L. Koepke
pkoepke@hoalaw.biz
Maxwell & Morgan, P.C.
4854 E. Baseline Road, Suite 104
Mesa, Arizona 85206
Telephone (480) 833-1001

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Attorneys for Plaintiff and the Class*

* *Pro Hac Vice admission to be sought*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on September 21, 2020.

/s/ Patrick H. Peluso