Brett A. Shumate (*pro hac vice*)
Kaytlin L. Roholt (*pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  202.879.3939
Facsimile: 202.626.1700
E-Mail:  bshumate@jonesday.com
         kroholtlane@jonesday.com

Brett W. Johnson (#021527)
Anthony T. King (#027459)
Ryan J. Regula (#028037)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Facsimile:  602.382.6070
E-Mail: bwjohnson@swlaw.com
        aking@swlaw.com
        rregula@swlaw.com

*Counsel for Defendant National Republican Senatorial Committee*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Whittaker, individually and, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>National Republican Senatorial Committee, a District of Columbia non-profit organization,<br><br>Defendant. | No. 3:20-cv-08150-PCT-JJT<br><br>**NATIONAL REPUBLICAN SENATORIAL COMMITTEE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER RULE 12(b)(6) OR TO STAY PROCEEDINGS**<br><br>**(Oral Argument Requested)** |

## I. INTRODUCTION

Whittaker's response to the NRSC's motion to dismiss attempts to complicate a simple argument. It is a bedrock principle of American jurisprudence that a defendant cannot be held liable for violating an unconstitutional law. Applying that principle here, the NRSC cannot be held liable for sending text messages to Whittaker and the putative class in 2016–2020 because the Telephone Consumer Protection Act ("TCPA") unconstitutionally restricted speech from 2015 until 2020.

Whittaker complicates this straightforward argument by mischaracterizing controlling precedent. In *Barr v. American Association of Political Consultants*, 140 S. Ct. 2335 (2020), the Court severed the statute *prospectively*, leaving a constitutional version of the TCPA applicable to *future calls*. But a majority of the Court did not—and had no reason to—address the question presented in this case, *i.e.*, a defendant's *retrospective* liability for *past calls* that allegedly violated the unconstitutional version of the TCPA in effect from 2015 until 2020 before the Court cured the constitutional problem. Although Justice Kavanaugh and Justice Gorsuch briefly debated this question in dueling opinions, the Court squarely answered that question nearly fifty years ago in *Grayned v. City of Rockford*, 408 U.S. 104 (1972), and reaffirmed it in *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017).

Whittaker's opposition to the NRSC's motion to stay proceedings is equally unavailing. The Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511, could simplify the issues in this case by clarifying the definition of autodialer that governs Plaintiff's claims. As a Court in this District recently recognized, "[t]he Supreme Court's resolution of *Facebook* has the potential to significantly narrow the issues involved in this case, including the scope of discovery as to [Plaintiff's] ATDS allegations and the scope of [Plaintiff's] class-certification request." *Canady v. Bridgecrest Acceptance Corp.*, No. 19-cv-04738-DWL, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020). It would be inconsistent with principles of judicial economy for the Court and the parties to engage in burdensome and costly discovery and motions practice using a definition of autodialer that may be defunct in nine months. Thus, if the Court does not dismiss this case under *Political*

*Consultants*, it should at least stay the case pending *Facebook*.

## II. ARGUMENT

### A. The NRSC Cannot Be Liable For Violating The Unconstitutional Version Of The TCPA In Effect When The NRSC Sent The Text Messages.

Whittaker's complaint must be dismissed because the NRSC cannot be held liable for conduct that violated an unconstitutional law. *See* Def.'s Mot. at 6–9. Nearly fifty years ago, the Supreme Court squarely held that a defendant cannot be punished for conduct that was proscribed by an unconstitutionally discriminatory law. *Grayned*, 408 U.S. at 107. Section 227(b)(1)(A)(iii) of the TCPA—the statute that the NRSC allegedly violated by texting Whittaker and the putative class in 2016–2020—was unconstitutional from 2015–2020 because it discriminated based on content. *See Political Consultants*, 140 S. Ct. at 2335. *Grayned* and *Political Consultants* compel dismissal of Whittaker's complaint because the NRSC cannot be held liable for sending text messages that allegedly violated § 227(b)(1)(A)(iii) at a time when the statute was unconstitutional.

Whittaker's contention that *Grayned* is just "one case," Pl.'s Opp'n at 5, understates the support for the bedrock legal principle that a defendant cannot be punished for violating an unconstitutional law. *See Welsh v. United States*, 398 U.S. 333, 361–64 (1970) (Harlan, J., concurring in result) (conviction stemming from unequal treatment "must be reversed"); *Bond v. United States*, 564 U.S. 211, 226–28 (2011) (Ginsburg, J., concurring) (a defendant has a "right not to be convicted under a constitutionally invalid law" because "a law 'beyond the power of Congress,' for any reason, is 'no law at all'") (quotation omitted). The Supreme Court reaffirmed this principle three years ago in *Morales-Santana*, declaring that "a defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity." 137 S. Ct. at 1699 n.24 (citing *Grayned*).

Whittaker's claim that this principle is limited to cases involving criminal liability lacks support and makes no sense. *See* Pl.'s Opp'n at 6. The Supreme Court reaffirmed *Grayned* in a civil case. *See Morales-Santana*, 137 S. Ct. at 1699 n.24. Whittaker cites no

authority supporting the illogical position that a defendant can be held civilly, but not criminally, liable for violating an unconstitutional law.  Put simply, a defendant cannot be sanctioned for violating an unconstitutional law—whether civil or criminal.  *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (reversing fine because election law violated First Amendment); *Bates v. State Bar of Arizona*, 433 U.S. 350, 384 (1977) (reversing attorney discipline because bar rule violated First Amendment); *Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 671 (1973) (reversing expulsion because university's bylaw violated the First Amendment).  Nor can a defendant be ordered to pay civil damages for violating an unconstitutional law because "constitutionally protected" speech is "beyond the reach of a damages award." *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 926 (1982); *see, e.g.*, *The Florida Star v. B.J.F.*, 491 U.S. 524, 532 (1989) (reversing damages award because "imposing damages" for constitutionally protected speech "violates the First Amendment"); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496–97 (1975) (reversing civil damages award because state law violated First Amendment); *New York Times Co. v. Sullivan*, 376 U.S. 254, 292 (1964) (reversing judgment awarding damages because state libel law violated the First Amendment).

It also makes no difference whether a law is unconstitutional as enacted (as in *Grayned*) or as amended (as in *Political Consultants*).  *See* Pl.'s Opp'n at 6.  The legality of a defendant's conduct must be judged under the law then "in effect," regardless of how the law comes into being.  *Grayned*, 408 U.S. at 107 n.2; *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (explaining that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place").  In *Grayned*, as this case, the laws were unconstitutional at the time when the defendants acted. *See* 408 U.S. at 107 n.2.  That the Supreme Court "subsequently cure[d] the infirmity" in § 227(b)(1)(A)(iii) by severing the government-debt exception is immaterial to the question of the NRSC's retrospective liability, *Morales-Santana*, 137 S. Ct. at 1699 n.24, just as it

1 was immaterial in *Grayned* that the city had subsequently amended the ordinance to cure
2 the constitutional infirmity, *see* 408 U.S. at 107 n.2.

3 The absence of a severability discussion in *Grayned* is a red herring. *See* Pl.'s Opp'n
4 at 6. Severability was a non-issue in *Grayned* because the Court simply judged the conduct
5 under the law then in effect. *See* 408 U.S. at 107 n.2. There was no need to discuss
6 severability because the Court declared an identical law unconstitutional in another case,
7 leaving only the question of retrospective liability to be decided in *Grayned*. *See id*. at 107
8 (citing *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92 (1972)). So too here. After
9 *Political Consultants* declared § 227(b)(1)(A)(iii) unconstitutional from 2015–2020, the
10 only question here, as in *Grayned*, is whether the NRSC can be held retrospectively liable
11 for violating a law that was unconstitutional at the time the defendant acted. Just as *Mosley*
12 compelled reversal of Grayned's conviction, *Political Consultants* compels dismissal of the
13 complaint against the NRSC.

14 In addition to *Grayned*, Whittaker mischaracterizes the Court's holding in *Political*
15 *Consultants*. By severing the government-debt exception, the Court awarded a *prospective*
16 remedy, leaving a constitutional version of the TCPA applicable to *future* calls. But a
17 majority of the Court said nothing about the distinct question presented in this case, *i.e.*, a
18 company's *retrospective* liability for *past* calls that allegedly violated the unconstitutional
19 version of the TCPA in effect from 2015 until 2020. Justice Kavanaugh (joined by the
20 Chief Justice and Justice Alito) and Justice Gorsuch (joined by Justice Thomas) briefly
21 debated the question of retrospective liability for past calls in separate opinions. *Compare*
22 *Political Consultants*, 140 S. Ct. at 2355 n.12 (Kavanaugh, J.) (plurality op.) (arguing that
23 "our decision today does not negate the liability of parties who made robocalls covered by
24 the robocall restriction"), *with id.* at 2366 (Gorsuch, J., concurring in the judgment in part
25 and dissenting in part) (explaining that "a holding that shields only government-debt
26 collection callers from past liability under an admittedly unconstitutional law would wind
27 up endorsing the very same kind of content discrimination we say we are seeking to
28 eliminate"). Their dueling opinions on this topic—neither of which commanded a majority

or contained extensive discussion—rebuts Whittaker's contention that the Supreme Court answered the question of the NRSC's retrospective liability for past calls in *Political Consultants*.

Whittaker is not only wrong on the law, but her reliance on policy is also misguided. *See* Pl.'s Opp'n at 7. Whittaker's suggestion that shielding the NRSC from retrospective liability will incentivize millions of robocalls is a distraction because the TCPA remains in effect *going forward*. The Court addressed Justice Kavanaugh's concern about "tens of millions of consumers who would be bombarded every day with nonstop robocalls" by severing the government-debt exception *prospectively*. *Political Consultants*, 140 S. Ct. at 2348 (Kavanaugh, J.) (plurality op.). Excusing the NRSC from *retrospective* liability for past calls made under an unconstitutional statute will do nothing to incentivize future calls because a constitutional version of § 227(b)(1)(A)(iii) applies prospectively.

Finally, Whittaker's retroactivity argument misses the mark. *See* Pl.'s Opp'n at 7. As Justice Kavanaugh recognized, retroactivity concerns would arise if government debt collectors were "penalized or held liable for making robocalls to collect government debt" from 2015 until 2020. *Political Consultants*, 140 S. Ct. at 2355 n.12 (Kavanaugh, J.) (plurality op.). But the NRSC does not complain about being penalized for making calls that were previously exempt under the statute. Rather, the problem is unequal treatment— the same problem in *Political Consultants*—if the NRSC were held retrospectively liable while other callers escape such liability for calls made during the same time period. As Justice Gorsuch explained, "shield[ing] *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination [the Court sought] to eliminate." *Id*. at 2366 (Gorsuch, J., concurring in judgment in part and dissenting in part) (emphasis added). To ensure political speech is "treated equally with debt-collection speech," *id.* at 2344 (Kavanaugh, J.) (plurality op.), the NRSC cannot be held liable for the calls it made during the period when the statute was unconstitutional.

### B. In The Alternative, The Court Should Stay This Case Pending The Supreme Court's Decision In *Facebook, Inc. v. Duguid.*

If the Court does not dismiss the complaint, the Court should stay proceedings pending the Supreme Court's decision in *Facebook* because, if the Supreme Court reverses the Ninth Circuit's definition of autodialer, it will simplify the issues in this case. Since the Supreme Court granted certiorari in *Facebook*, several courts within and outside the Ninth Circuit have granted motions to stay TCPA class actions pending the Court's decision in that case. *See, e.g.*, *Veytia v. Portfolio Recovery Assocs., LCC*, No. 20-cv-0341-GPC-MSB, 2020 WL 5257881 (S.D. Cal. Sept. 3, 2020); *Jensen v. Roto-Rooter Servs. Co.*, No. 20-cv-00223-JCC, Dkt. No. 27 (W.D. Wash. Aug. 20, 2020); *Hoffman v. Jelly Belly Candy Co., Inc.*, No. 19-cv-01935-JAM-DB, Dkt. No. 22 (E.D. Cal. Jul. 17, 2020); *A.M. v. Bridgecrest Acceptance Corp.*, No. 20-cv-00553-SEP (E.D. Mo. Aug. 28, 2020); *Seefeldt v. Entm't Consulting Int'l, LLC*, No. 19-cv-00188-MTS, 2020 WL 4922371 (E.D. Mo. Aug. 21, 2020); *Wright v. eXp Realty, LLC*, No. 16-cv-015851-PGB-EJK, Dkt. No. 108 (M.D. Fla. Aug. 12, 2020). In fact, earlier this month, another Court in this District granted such a motion. *See Canady*, 2020 WL 5249263. Because all three *Lockyer* factors weigh in favor of a stay, this Court should do the same here. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

*First*, a stay would not cause Whittaker to suffer any undue prejudice or hardship. While Whittaker seeks injunctive relief to prevent speculative, future TCPA violations, *see* Compl. ¶ 26 & p. 10, she "doesn't seek to end an ongoing injury." *Canady*, 2020 WL 5249263, at *3. Nor does she seek preliminary injunctive relief. *See* Compl. p. 10. As other courts in this District have recognized, even where a plaintiff does allege ongoing harm, a plaintiff's failure to seek temporary injunctive relief to remedy that harm "is significant" in the stay analysis because it suggests that the plaintiff will not "suffer irreparable damage and a miscarriage of justice if the case were to be stayed." *In re Sprouts Farmers Mkt., Inc. Employee Data Sec. Breach Litig.*, No. 16-MDL-02731-DLR, 2017 WL 3051243, at *2 (D. Ariz. May 24, 2017) (internal quotation marks omitted). Because

Whittaker seeks only statutory damages for past conduct, *see* Compl. ¶¶ 26, 41–42, and injunctive relief from unrealized future injuries, this case "falls into one of the categories of stays approved by the Ninth Circuit." *Canady*, 2020 WL 5249263, at *3. Moreover, because "Plaintiff does not allege that she or other class members have received unauthorized text messages from [the NRSC] since [April] 2020, . . . her damages will not be affected if a stay is granted." *Jensen*, Dkt. No. 27 at 3.

Whittaker's claim that the delay caused by a stay will "threaten[] the availability of evidence" changes nothing. Pl.'s Opp'n 11; *see also id.* at 13. To begin with, a stay pending a decision in *Facebook* would not be "impermissibly indefinite in nature." *Canady*, 2020 WL 5249263, at *3 (internal quotation marks omitted). The Supreme Court has already scheduled oral argument in *Facebook* for December 8, 2020, and it is likely to issue a decision by the end of the upcoming Term. *See* Order Setting Argument, *Facebook*, No. 19-511 (Sep. 16, 2020). A stay in this case will therefore last only "until the Supreme Court issues a decision, which is a permissible end point." *Canady*, 2020 WL 5249263, at *3. In addition, the NRSC is "aware of its obligations" to preserve evidence and has already "instituted a litigation hold to preserve documents that may be relevant to [this] litigation." *Id.* at *4. This fact, "coupled with the fact that the stay is not for an indefinite amount of time, further underscores that there is little risk of harm in instituting a stay." *Id.*

*Second*, the NRSC will suffer substantial hardship in the absence of a stay. Whittaker argues that a stay is not warranted because, regardless of whether the Supreme Court affirms the Ninth Circuit's definition of autodialer, the parties will still need to engage in discovery regarding the dialing system that was used to send the allegedly unlawful messages. *See* Pl.'s Opp'n 12. But this argument misses the point. While some discovery may be necessary in this case, the Supreme Court's decision in *Facebook* could significantly reduce the discovery burdens the NRSC faces. If discovery proceeds based on a definition of autodialer that the Supreme Court later reverses, the NRSC will have been forced to "bear asymmetric discovery burdens and costs associated with defending itself against the purported class's claims" using a definition of autodialer that is "rendered moot by the

Supreme Court's decision." *Jensen*, Dkt. No. 27 at 3; *see also Nguyen v. Marketsource, Inc.*, No. 17-cv-02063, 2018 WL 2182633, at *7 (S.D. Cal. May 11, 2018) ("[I]t would prove to be an extraordinary waste of time and money to continue litigating this case only to have to do it all again because the experts, the parties and the Court were proceeding under a legal framework that the [Supreme Court] determined did not apply." (internal quotation marks omitted)). The hardship to the NRSC if this suit were permitted to move forward therefore weighs in favor of a stay.

*Third*, a stay pending *Facebook* would promote judicial economy and the orderly course of justice. Plaintiff argues that a stay is not warranted because *Facebook* will not necessarily moot all of the issues in this case. *See* Pl.'s Opp'n 13. But the relevant inquiry is not whether the Supreme Court's decision will dispose of all claims entirely; it is whether the decision will "simplify" these proceedings. *McElrath v. Uber Techs., Inc.*, No 16-cv-7241, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017); *see also Canady*, 2020 WL 5249263, at *4 ("[T]he fact that a [pending] decision . . . may not settle every question of fact and law in [a] suit[ ] . . . , but in all likelihood . . . will settle many and simplify them all weighs in favor of granting a stay." (internal quotation marks omitted)). If the Supreme Court reverses the Ninth Circuit in *Facebook*, there is no doubt that its decision will simplify the issues in this case. *Facebook* will clarify a controlling question of law central to Plaintiff's claims that has been the subject of substantial conflict among the circuits in recent years. It will also significantly narrow the scope of discovery by clarifying the type of equipment that falls within the TCPA's statutory prohibition. Waiting for the Supreme Court's decision in *Facebook* will therefore "allow this Court to adjudicate the issues before it with far greater certainty." *Hoffman v. Jelly Belly Candy Co., Inc.*, No. 19-cv-01935-JAM-DB, 2020 WL 5239884, at *2 (E.D. Cal. June 26, 2020). Indeed, "[t]o do otherwise would be a waste of judicial resources and a waste of the parties' time and energy." *Id.*

Plaintiff's reliance on the Court's decision in one of her other TCPA cases is misplaced. *See Whittaker v. All Reverse Mortgage Inc.*, No. 20-cv-08016-PCT-DLR, Dkt. No. 26 (D. Az. Jul. 17, 2020); Pl.'s Opp'n at 12–13. In that case, another Court in this

District denied a motion to stay Whittaker's TCPA claims pending *Facebook*. Although the Court did conclude that the defendant's discovery burdens were not likely to be reduced by a stay, it also based its decision on the fact that the case had already undergone significant delay. In particular, the Court had already granted a motion to stay the case once pending the Supreme Court's decision in *Political Consultants*. *Id.* at 1–2. The Court accordingly was "not inclined" to stay the case again for another Supreme Court Term. *Id.* at 2. Those additional considerations are not present here, where no previous stays have been issued and a stay pending *Facebook* would only delay proceedings by, at most, nine months.

Thus, because all three *Lockyer* factors weigh in favor of a stay here, the Court should stay this case pending the Supreme Court's decision in *Facebook*.

\*     \*     \*

In the event the Court decides that a stay of all proceedings is not warranted here, the Court should, at the very least, restrict the first phase of discovery to focus only on the dialing equipment used to send the allegedly unlawful text messages. Whittaker's primary opposition is that a stay would prevent her from obtaining necessary discovery regarding the dialing equipment used by the NRSC. *See, e.g.*, Pl.'s Opp'n at 2, 8, 9, 12, 13. While the NRSC disagrees with this position for the reasons explained above, if the Court agrees with Whittaker, it should enter an order restricting discovery to the question whether the dialing equipment allegedly used by the NRSC had the capacity to store or produce numbers using a random or sequential number generator. This approach would reduce some of the discovery burdens facing the NRSC while allowing Whittaker to obtain discovery on the central question in this case. When the Supreme Court issues its decision in *Facebook*, the parties will be well positioned to move for summary judgment based on the Supreme Court's definition of autodialer and the facts produced in discovery. *See Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 WL 5104041, at \*4 (N.D. Cal. Aug. 11, 2020) (denying motion to stay putative TCPA class action pending *Facebook* but ordering that "discovery will be restricted to the question of whether the ATDS allegedly used to send

text messages to the named Plaintiffs had the capacity to store and produce numbers using a random or sequential number generator" and that "[c]lass discovery is not permitted").

### III. CONCLUSION

For these reasons, and all of the reasons set forth in the NRSC's Motion, the NRSC respectfully requests that the Court dismiss Plaintiff's complaint with prejudice or, in the alternative, stay this case pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*.

DATED this 28th day of September, 2020.

SNELL & WILMER L.L.P.

By:*/s/ Anthony T. King*
    Brett W. Johnson
    Anthony T. King
    Ryan J. Regula
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona  85004-2202

JONES DAY

    Brett A. Shumate (admitted *pro hac vice*)
    Kaytlin L. Roholt (admitted *pro hac vice*)
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001
    Telephone:  202.879.3939
    Facsimile: 202.626.1700
    E-Mail:  bshumate@jonesday.com
           kroholtlane@jonesday.com

*Attorneys for Defendant National Republican Senatorial Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Audrey Dodgin*

4836-5554-6828

- 11 -