# Exhibit A

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC WOMACK
Assistant Director, Federal Programs Branch

JOSHUA C. ABBUHL (D.C. Bar No. 1044782)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8366 (tel.)
(202) 616-8470 (fax)
Joshua.Abbuhl@usdoj.gov

*Counsel for the United States of America*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZRIN MASSARO, on behalf of herself and all others similarly situated, | Case No. 3:20-cv-00510-AJB-MSB |
| *Plaintiff*, | **UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT** |
| v. | |
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | Judge: Hon. Anthony J. Battaglia |
| *Defendant*. | Courtroom: 4A<br>Date: March 25, 2021<br>Time: 2:00 p.m. |

1

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................3

I.   Statutory Background.............................................................................................3

II.  Judicial Decisions After *AAPC* ...........................................................................4

III. Procedural Background .........................................................................................5

ARGUMENT ...................................................................................................................6

I.   The Court Should First Resolve Nonconstitutional Grounds For
     Decision ..................................................................................................................6

II.  PETA May Be Held Liable For Calls and Texts Sent Before the Supreme
     Court's Decision in *AAPC*....................................................................................6

     A.   Because The Government-Debt Exception Is Unconstitutional, It
          Has No Effect on the Autodialer Restriction, Which Has Been
          Fully Operative at All Relevant Times ........................................................7

     B.   Defendant's Countervailing Arguments Are Meritless .............................10

III. PETA's Challenge to an FCC Rule Should Be Rejected .....................................16

CONCLUSION ..............................................................................................................18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*AAPC v. FCC,*
  923 F.3d 159 (4th Cir. 2019) ........................................................................ 12

*Abramson v. Fed. Ins. Co.,*
  No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020) .................... 5

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
  953 F.3d 760 (Fed. Cir.), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct.
  549 (2020) ..................................................................................................... 11

*Barr v. American Association of Political Consultants,*
  (*AAPC*), 140 S. Ct. 2335 (2020) ............................................................... *passim*

*Bonkuri v. Grand Caribbean Cruises, Inc.,*
  No. 20-cv-60638, 2021 U.S. Dist. LEXIS 30940 (S.D. Fla. Jan. 19, 2021) ...... 5

*Chicago, I. & L.R. Co. v. Hackett,*
  228 U.S. 559 (1913) ........................................................................................ 9

*Creasy v. Charter Commc'ns, Inc.,*
  No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ....................... 4

*Dorchy v. Kansas,*
  264 U.S. 286 (1924) ........................................................................................ 9

*Duguid v. Facebook, Inc.,*
  926 F.3d 1146 (9th Cir. 2019) ...................................................................... 12

*Eberle v. Michigan,*
  232 U.S. 700 (1914) .............................................................................. 7, 8, 12

*FCC v. Fox Television Stations, Inc.,*
  567 U.S. 239 (2012) ...................................................................................... 13

*Frost v. Corp. Comm'n of Okla.,*
  278 U.S. 515 (1929) ......................................................................... 2, 4, 7, 9

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ...................................................................................... 14

*Greenley v. Laborers' Int'l Union of N. Am.,*
  271 F. Supp. 3d 1128 (D. Minn. 2017) ......................................................... 17

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) .......................................................................................... 6

*Harper v. Va. Dep't of Tax'n,*
  509 U.S. 86 (1993) ..................................................................................... 9, 11

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.,*
  No. 5:20-cv-38, 2020 WL 7346536 (M.D. Fla. Dec. 11, 2020) ....................... 4

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
   18 FCC Rcd. 14014 (2003) ............................................................................................ 3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
   7 FCC Rcd. 8752 (1992) ............................................................................................... 16

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
   27 FCC Rcd. 1830 (2012) ....................................................................................... 16, 18

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
   30 FCC Rcd. 7961 (2015) ............................................................................................. 16

*Italian Colors Rest. v. Becerra,*
   878 F.3d 1165 (9th Cir. 2018) ..................................................................................... 18

*James B. Beam Distilling Co. v. Georgia,*
   501 U.S. 529 (1991) ....................................................................................................... 9

*Lidas, Inc. v. United States,*
   238 F.3d 1076 (9th Cir. 2001) ....................................................................................... 9

*Lindenbaum v. Realgy, LLC,*
   No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ............................... 4

*McCurley v. Royal Sea Cruises, Inc.,*
   No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021) .......................................... 5

*Miller v. Alabama,*
   567 U.S. 460 (2012) ..................................................................................................... 15

*Mims v. Arrow Fin. Servs., LLC,*
   565 U.S. 368 (2012) ....................................................................................................... 3

*Minnesota v. Mille Lacs Band of Chippewa Indians,*
   526 U.S. 172 (1999) ..................................................................................................... 10

*Montgomery v. Louisiana,*
   136 S. Ct. 718 (2016) ............................................................................................. 14, 15

*Retail Dig. Network, LLC v. Prieto,*
   861 F.3d 839 (9th Cir. 2017) ....................................................................................... 18

*Rivers v. Roadway Exp., Inc.,*
   511 U.S. 298 (1994) ............................................................................................ 9, 10, 11

*Sessions v. Morales-Santana,*
   137 S. Ct. 1678 (2017) ................................................................................................. 15

*Shen v. Tricolor Cal. Auto Grp., LLC,*
   No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020) .................................... 5

*Stoutt v. Travis Credit Union,*
   No. 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021) ..................................... 5

*Trujillo v. Free Energy Sav. Co.*,
   No. 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020) ................................... 5

*United States v. Dunifer*,
   219 F.3d 1004 (9th Cir. 2000) ................................................................................. 17

*United States v. Jackson*,
   390 U.S. 570 (1968) .............................................................................................. 8, 12

*United States v. Miselis*,
   972 F.3d 518 (4th Cir. 2020) .............................................................................. 10, 14

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ................................................................................................ 18

*Wilson v. A.H. Belo Corp.*,
   87 F.3d 393 (9th Cir. 1996) .................................................................................... 17

**Statutes**

28 U.S.C. § 2342(1) .................................................................................................... 16

47 U.S.C. § 227(b)(1)(A) ................................................................................. 1, 3, 5, 16

47 U.S.C. § 402(a) ....................................................................................................... 16

47 U.S.C. § 608 ............................................................................................................. 3

Model Penal Code § 204(3)(b)(i) .................................................................................. 13

Bipartisan Budget Act of 2015,
   Pub. L. No. 114-74, 129 Stat. 584 (2015) ................................................................ 3

Telephone Consumer Protection Act of 1991,
   Pub. L. No. 102-243, 105 Stat. 2394 (1991) ............................................................ 3

**Regulations**

47 C.F.R. § 64.1200 ............................................................................................... 16, 18

# INTRODUCTION

Since 1991, the Telephone Consumer Protection Act ("TCPA") has prohibited the use of certain automated technologies in making calls to cell phones absent the consent of the person being called. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (the "autodialer restriction"). There is no dispute that the autodialer restriction was valid when enacted. In a 2015 amendment, Congress added an exception to the statute to allow the use of autodialers for calls made to collect debts owed to or guaranteed by the United States without the consent of the person being called (the "government-debt exception"). Last year, in *Barr v. American Association of Political Consultants* (*AAPC*), 140 S. Ct. 2335 (2020), the Supreme Court held that the government-debt exception rendered the statute content based and accordingly severed the government-debt exception from the remainder of the statute. Thus, in light of *AAPC*, there is also no dispute that a call or text made today in violation of the autodialer restriction would again subject a robocaller to liability. *See id.* at 2353 (plurality op.) ("With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law.").

Nonetheless, Defendant People for the Ethical Treatment of Animals ("PETA" or "Defendant") argues that it would be unconstitutional to apply the autodialer restriction to the text messages at issue in this case because Defendant sent them after the government-debt exception was enacted but before the Court's decision in *AAPC*. According to Defendant, this time period (roughly 2015-2020) amounted to a regulatory donut hole in which the TCPA cannot constitutionally be enforced against any robocaller because of the presence of the government-debt exception, even though there is no dispute that the autodialer restriction was fully constitutional before and after that time period.

This result was squarely rejected in the *AAPC* plurality opinion, in which three Justices confirmed that the opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12, and neither of the opinions

concurring in the judgment with respect to severability disputed that conclusion, *see id.* at 2357 (Sotomayor, J.); *id.* at 2363 (Breyer, J.). And although three district court opinions have ignored that clear direction and held that calls and texts made before the government-debt exception's severance are immune from the TCPA, a substantial majority of district courts – including all district courts to have considered the issue in this circuit – have rejected Defendant's argument that the autodialer restriction was unenforceable for this five-year period.

Defendant's argument should also be rejected by this Court because it runs counter to the rule that "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 140 S. Ct. at 2353 (plurality op.) (quoting *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929)). In circumstances like these, in which the pertinent statute was valid as originally enacted, an unconstitutional amendment is "powerless to work any change in the existing statute," and the original "statute must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 526-27. Based on that rule, the Supreme Court has repeatedly allowed a finding of liability under statutes that were valid when enacted but to which invalid amendments had been promulgated before the time of the alleged violation.

Likewise, the Court should reject Defendant's separate argument that it is unconstitutional for the FCC to require signed, written consent before making robocalls for telemarketing or advertising purposes. As an initial matter, Defendant is jurisdictionally barred from attacking this FCC rule, since the Hobbs Act requires such challenges to be brought in the court of appeals. Defendant's argument also fails on the merits. As a regulation of commercial speech that applies only within a particular technological medium, the FCC rule is subject to intermediate scrutiny. Because Defendant argues only that the rule would fail strict scrutiny – not intermediate scrutiny – Defendant provides no reason for invalidating the rule if the Court were to reach the merits.

**BACKGROUND**

## I.    Statutory Background

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-72 (2012); *see* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), 105 Stat. 2394, 2394. As pertinent here, the TCPA's autodialer restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service[.]

47 U.S.C. § 227(b)(1)(A)(iii). This provision has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003).

In 2015, Congress amended the TCPA to provide that the autodialer restriction does not apply to calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1), 129 Stat. 584, 588. The Communications Act of 1934 contains a severability provision (covering the TCPA), which states that "[i]f any provision of this chapter . . . is held invalid, the remainder . . . shall not be affected." 47 U.S.C. § 608.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception was content-based and violated the First Amendment. 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring as to that conclusion). However, the Court rejected the argument that the presence of the government-debt exception meant that the overall restriction on autodialed calls should be invalidated. *See id.* at 2348-49 (plurality op.); *id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"). The Court further held that the government-debt exception was severable, and thus "the correct result in this case is to sever the . . .

exception and leave in place the longstanding robocall restriction." *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer J.) (concurring in judgment with respect to severability and dissenting in part). As the plurality explained, "an unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *Id.* at 2353 (quoting *Frost*, 278 U.S. at 526-27).

The plurality opinion contained a footnote in which three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the autodialer restriction. The opinion explained that "although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court . . . or such date that the lower courts determine is appropriate." *Id.* at 2355 n.12. However, the plurality continued by flatly stating that "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* Neither of the separate opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.).

## II.    Judicial Decisions After *AAPC*

Subsequent to the Supreme Court's decision in *AAPC*, several defendants moved to dismiss complaints that sought enforcement of the TCPA against calls and text messages made after the government-debt exception was added but before *AAPC* was decided. Initially, three district courts agreed with this argument and dismissed TCPA complaints to the extent they sought damages for calls and texts made during this time period. *See Creasy v. Charter Comm'ns, Inc.*, No. 20-cv-1199, 2020 WL 5761117 (E.D. La. Sept. 28, 2020); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38,

2020 WL 7346536 (M.D. Fla. Dec. 11, 2020).[1] However, since that batch of early deci-sions, every district court to have addressed the issue – including several courts in the Ninth Circuit – have rejected the argument that robocallers can avoid liability for auto-dialed calls and texts made before the government-debt exception's severance. *See Abramson v. Fed. Ins. Co.*, No. 8:19-cv-2523, 2020 WL 7318953 (M.D. Fla. Dec. 11, 2020); *Shen v. Tricolor Cal. Auto Grp., LLC*, No. 20-cv-7419, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co.*, No. 5:19-cv-2072, 2020 WL 8184336 (C.D. Cal. Dec. 21, 2020); *Stoutt v. Travis Credit Union*, No. 2:20-cv-1280, 2021 WL 99636, (E.D. Cal. Jan. 12, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 20-cv-60638, 2021 U.S. Dist. LEXIS 30940 (S.D. Fla. Jan. 19, 2021); *McCurley v. Royal Sea Cruises, Inc.*, No. 17-cv-986, 2021 WL 288164 (S.D. Cal. Jan. 28, 2021).

## III.    Procedural Background

Plaintiff filed her operative complaint on May 15, 2020, asserting violations of 47 U.S.C. § 227(b)(1)(A)(iii). ECF No. 27. PETA first moved to dismiss on May 29, 2020 (before *AAPC* was decided), arguing that Plaintiff could not demonstrate an injury in fact and that Plaintiff had provided adequate consent to be sent the text message at issue. ECF No. 30. Another defendant – Beyond Meat, which was later dismissed from the case, *see* ECF No. 40 – had filed a separate motion to dismiss, which included the argu-ment that this case should be stayed until the Supreme Court decided *AAPC*. ECF No. 33-1, at 19-21. Beyond Meat filed a notice of constitutional question, ECF No. 34, which this Court later certified, ECF No. 39. The United States acknowledged the constitu-tional question, but informed the Court that since the defendant's motion did not actu-ally request that the autodialer restriction be held unconstitutional, there was "no occa-sion for the United States to intervene at [that] time." ECF No. 48, ¶ 6.

---

[1] Defendants in these cases did not timely notify the government of their constitu-tional challenges and the United States accordingly had no opportunity to intervene in the district courts. The *Lindenbaum* decision has been appealed, and the United States has intervened in the Sixth Circuit and filed a brief arguing that the decision below is incorrect.

A few months after *AAPC* was decided, PETA filed another motion to dismiss, arguing that it would be unconstitutional to apply the autodialer restriction to calls and texts made after the government-debt exception was enacted but before the Court's decision in *AAPC*. ECF No. 65-1 ("Def. Br."). PETA filed another notice of constitutional question, ECF No. 66, which the government again acknowledged, ECF No. 73. The government requested additional time to determine whether to intervene, ECF Nos. 73, 82, and the Court granted those requests, ECF Nos. 75, 84, allowing the United States until February 26, 2021 to intervene and file its brief in defense of the constitutionality of the TCPA.

## ARGUMENT

### I. The Court Should First Resolve Nonconstitutional Grounds For Decision

As an initial matter, this Court should not address PETA's constitutional challenges until it resolves all potential nonconstitutional issues. "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981).

In addition to its constitutional challenges, PETA argues that the complaint should be dismissed on non-constitutional grounds. *See* ECF No. 30-1, at 14-17. As a matter of constitutional avoidance, the Court should first address these non-constitutional grounds of decision, which may obviate the need to decide the constitutional question.

### II. PETA May Be Held Liable For Calls and Texts Sent Before the Supreme Court's Decision in *AAPC*

In holding that the government-debt exception was unconstitutional and severable from the remainder of the TCPA, the Supreme Court in *AAPC* affirmed the validity of the TCPA's prohibition on making autodialed calls to cell phones without the consent of the person being called. *See* 140 S. Ct. at 2349, 2353 (plurality op.). The plurality further explained that the Court's opinion "does not negate the liability of parties who made

robocalls" prior to the Court's decision. *Id.* at 2355 n.12. Therefore, if the Court reaches the constitutional question, it should hold (consistent with *AAPC*) that PETA may be held liable for violations of the autodialer restriction that occurred after the enactment of the government-debt exception and prior to the Supreme Court's decision in *AAPC*.

## A. Because The Government-Debt Exception Is Unconstitutional, It Has No Effect on the Autodialer Restriction, Which Has Been Fully Operative at All Relevant Times

There is no dispute that the autodialer restriction was valid before the enactment of the government-debt exception and that it is likewise valid and enforceable today. PETA urges, however, that the autodialer restriction was rendered unenforceable for the period of time between the enactment of the government-debt exception and the Court's determination in *AAPC* that the exception is severable. *See* Def. Br. at 9-11.

That view cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that the original "statute must stand as the only valid expression of the legislative intent." *Frost v. Corp. Comm'n of Okla.*, 278 U.S. 515, 526-27 (1929). Thus, the validity of a provision "c[an] not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914).

Citing those principles, *AAPC* confirmed the continuing validity of the autodialer restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27). *AAPC* further concluded that the impermissibly content-based government-debt amendment was severable from the remainder of the statute, *see id.* at 2349; *id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part), and that its enactment did

1   not have any effect on the concededly valid restrictions already in effect, *id.* at 2348-49

2   (plurality op.) (rejecting the suggestion that the amendment "betray[ed] a newfound lack

3   of genuine congressional concern for consumer privacy" that called the autodialer re-

4   striction into doubt).

5       Prior Supreme Court decisions applying those principles confirm that a defendant

6   may be liable for violating a provision notwithstanding the enactment of an unconstitu-

7   tional amendment. In *Eberle*, the Court affirmed the petitioner's conviction under a

8   Michigan law prohibiting the manufacture of alcohol even though amendments to the

9   law enacted prior to the alleged violation were inconsistent with principles of equal pro-

10  tection. 232 U.S. at 706. The Court explained that the original "statute had been held to

11  be constitutional, and prohibited, without discrimination, the manufacture of all liquors.

12  That valid act the defendants violated, and their conviction cannot be set aside" based

13  on the enactment of unconstitutional amendments to the rule. *Id.* Likewise, in *United*

14  *States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be

15  tried under the Federal Kidnapping Act for alleged violations of its original terms, which

16  prohibited the interstate transport of kidnapped individuals, notwithstanding the uncon-

17  stitutionality of an amendment that conditioned the possibility of capital punishment on

18  the exercise of the right to trial by jury. In holding the capital punishment clause invalid

19  and severable from the remainder of the statute, *id.* at 583, 586, the Court confirmed

20  that "the unconstitutionality of that clause does not require the defeat of the law as a

21  whole," *id.* at 586. And the Court held that, notwithstanding the unconstitutional amend-

22  ment, "[t]he appellees may be prosecuted for violating" the original terms of the Act. *Id.*

23  at 591.

24      PETA's position cannot be reconciled with the holdings in *Eberle* and *Jackson*. In

25  each case, the defendant allegedly violated a law that was constitutional as originally

26  enacted. *See AAPC*, 140 S. Ct. at 2353. And in each case, the violation of the original

27  provision occurred after the legislature had enacted an amendment that was later held

28

to be invalid and severable from the statute. Thus, the principles that provided for liability in *Eberle* and *Jackson* likewise allow that result here.

PETA's argument is also at odds with longstanding principles of judicial review insofar as PETA suggests that the *AAPC* decision altered the law. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). An interpretation of a statute in a judicial opinion is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that part of a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chicago, I. & L.R. Co. v. Hackett*, 228 U.S. 559, 566 (1913) ("Th[e] act was therefore as inoperative as if it had never been passed, for an unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law."); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993) (confirming that when the Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule").

*AAPC*'s holding that the government-debt exception was unconstitutional and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566, means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. The Court's holding that the exception was severable from the remainder of the statute likewise "is a question of interpretation and of legislative intent." *Dorchy v. Kansas*, 264 U.S. 286, 290 (1924); *see Lidas, Inc. v. United States*, 238 F.3d 1076, 1080 (9th Cir. 2001) (question of

severability "is essentially an inquiry into legislative intent" (quoting *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999)). The *AAPC* plurality explained that the Communications Act's severability clause "squarely covers the unconstitutional government-debt exception and requires that we sever it," 140 S. Ct. at 2352, and observed that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," *id.* at 2353. *See also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In concluding that the exception was severable from the remainder of the statute, the Court said what the TCPA has always meant, not what it meant as of the date of the Court's decision. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and defendant may be held liable under the valid remainder of the statute. *Cf. United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (holding that defendants could be convicted for violating portions of the Anti-Riot Act that the court held were valid and severable from provisions found to violate the First Amendment).

### B. Defendant's Countervailing Arguments Are Meritless

Although Defendant raises several arguments in an attempt to avoid liability, they do not provide a basis for this Court to depart from the traditional understanding of severance principles.

**1.** PETA's principal contention is that the *AAPC* Court understood itself to be holding the entire autodialer restriction – not just the government-debt exception – unconstitutional for a period of time. *See* Def. Br. at 10; Def. Reply at 2 (ECF No. 72). But this contention disregards *AAPC*'s conclusion that that the government-debt exception did not render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plurality op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting

in part) (agreeing that "the government-debt exception provides no basis for undermining the general cell phone robocall restriction"), and the plurality's admonishment that its opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12.

Thus, while PETA correctly notes that unconstitutional laws are void, *see* Def. Br. at 9, PETA incorrectly seeks to apply that principle to the overall autodialer restriction (which was constitutional when enacted) rather than the government-debt exception. The *AAPC* Court made clear that the statute's only constitutional defect stemmed from the government-debt exception. *See, e.g., AAPC*, 140 S. Ct. at 2352 ("Enacted in 2015, the government-debt exception added an unconstitutional discriminatory exception to the robocall restriction."); *see also id.* at 2353 (describing the government-debt exception as "the constitutionally offending provision"). Accordingly, it is only the government-debt exception that should be deemed ineffective from its enactment, meaning that this amendment had no effect on the already-existing and constitutional autodialer restriction.[2] *See supra.* This result is also faithful to the *AAPC* plurality's admonition that litigants should not be able to undermine an entire regulatory scheme merely because one of its marginal provisions is unconstitutional. *See AAPC*, 140 S. Ct. at 2351 (plurality op.) ("Constitutional litigation is not a game of gotcha against Congress, where litigants

---

[2] For these reasons, PETA is incorrect to suggest that *AAPC*'s severance of the government-debt exception "cured the deficiency only prospectively, not retroactively." Def. Br. at 1. For this point, PETA seems to rely on a Federal Circuit opinion concurring in the denial of rehearing en banc in a case in which the Supreme Court has since granted *certiorari. See id.* at 13 (citing *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir.), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 549 (2020)). The *Arthrex* concurrence of course cannot displace Supreme Court precedent holding that the Court's construction of a statute does not "change" the law, *see Rivers*, 511 U.S. at 312-13, 313 n.12, or that that the Court's interpretation of a law must be given retroactive effect in all pending cases, *see Harper*, 509 U.S. at 97. In any event, *Arthrex* is inapposite as it concerns the relief warranted when a party challenges an agency decision issued by improperly appointed officers. There is no analogous agency decision in this case, in which the only question is whether defendant can be liable for allegedly violating a statutory provision that was valid when enacted.

1    can ride a discrete constitutional flaw in a statute to take down the whole, otherwise

2    constitutional statute.").

3           To hold otherwise would lead to substantial logistical difficulties. Before the Su-

4    preme Court decided *AAPC*, two circuits had struck down the government-debt excep-

5    tion but held it severable from the remainder of the statutory scheme. *See Duguid v. Fa-*

6    *cebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019); *AAPC v. FCC*, 923 F.3d 159 (4th Cir. 2019).

7    Presumably, under PETA's theory, a defendant would therefore be liable for violating

8    the autodialer restriction for calls made within the Fourth and Ninth Circuits following

9    those appellate decisions but not for violations of the statute in other circuits until after

10    the Supreme Court decided *AAPC*, notwithstanding the interstate nature of the regu-

11    lated activity. That result underscores the problems inherent in Defendant's position.

12          **2.** Defendant asks this Court to ignore the *AAPC* plurality's statement that the

13    decision "does not negate the liability of parties who made robocalls" prior to the

14    Court's decision, 140 S. Ct. at 2355 n.12, arguing that this statement is non-binding dicta.

15    *See* Def. Br. at 9 n.1; Def. Reply at 4-7. Although it is true that this footnote appeared in

16    an opinion signed by only three Justices, neither of the opinions expressly concurring

17    with respect to severability disagreed with the footnote's conclusion that robocallers

18    who violated the clearly constitutional autodialer restriction during the relevant time pe-

19    riod should still be liable for those violations of that provision. *See AAPC*, 140 S. Ct. at

20    2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J., concurring in judg-

21    ment with respect to severability and dissenting in part). And as explained above, allow-

22    ing liability for entities like PETA would be consistent with the Supreme Court's treat-

23    ment of similar instances in which the Court upheld liability for violations of an under-

24    lying, lawful provision even after an unconstitutional amendment has later been enacted.

25    *See Eberle*, 232 U.S. at 705; *Jackson*, 390 U.S. at 591.

26          The Court may also easily reject Defendant's argument that the plurality's state-

27    ment in the footnote "refers only to liability based on final judgments." Def. Br. at 9 n.1;

28    *see* Def. Reply at 6. The language in the footnote is unrestricted: by its terms it applies to

all "parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S. Ct. at 2355 n.12. Defendant identifies nothing in *AAPC* that can reasonably be read to limit this statement's applicability to final judgments.

**3.** Defendant suggests that it would work a "fundamental unfairness" to "impos[e] penalties for violations of a statute that was unconstitutional, and thus 'void' when the alleged violations occurred." Def. Br. at 14. But any liability imposed on PETA would stem from violations of the autodialer restriction, which as discussed, was fully constitutional at all relevant times. Moreover, PETA cannot claim that its activities were prejudiced in any way. The autodialer restriction was passed approximately thirty years ago and has applied to entities like PETA since its enactment. PETA cannot now complain that it was unaware of the TCPA's prohibitions at the time it undertook the actions that are the subject of the present complaint.

Nor is it unfair for the Supreme Court plurality to recognize that debt collectors should not be held liable for calls and texts to collect government debt prior to *AAPC*, while at the same time upholding liability for other robocallers during that time period. Defendant suggests doing so would amount to impermissible discrimination based on the content of speech. Def. Reply at 6. That is incorrect. Holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the "fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *cf.* Model Penal Code § 2.04(3)(b)(i) (providing a defense to criminal liability when a defendant "acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in . . . a statute or other enactment"). Thus, even though the government-debt exception was invalid from its inception and never had effect, it does not follow that debt collectors should be penalized for reasonably relying on its enactment. Any differential treatment between debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that

certain callers had fair notice of potential liability while others did not. That distinction is undisputedly content neutral.

**4.** Defendant cites various cases that it believes show that PETA cannot be held liable, but these cases are all distinguishable. For example, Defendant cites *Grayned v. City of Rockford*, 408 U.S. 104 (1972), for the proposition that liability turns on "whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action." Def. Br. at 13. In *Grayned*, the petitioner had been convicted of violating a content-based, anti-picketing ordinance. Following his conviction, the ordinance was amended to omit the exception that had rendered the law content-based. In a footnote, the *Grayned* Court noted that the amendment "has, of course, no effect" on the validity of the petitioner's conviction because the Court "must consider the facial constitutionality of the ordinance in effect when appellant was arrested and convicted." 408 U.S. at 107 n.2.

Unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. There is no indication that the provision contained a severability clause like the one found in the Communications Act, and the Court noted no legislative history indicating that the legislature would have enacted the general prohibition on picketing without the offending exception. Accordingly, the anti-picketing provision as a whole was invalid as enacted, and the Court held that Grayned could not be convicted under that unconstitutional provision. By contrast, *AAPC* confirms that the autodialer restriction was valid when enacted and that the government-debt exception was severable and did not undermine the validity of the restriction. 140 S. Ct. at 2349, 2353 (plurality op.). *Grayned* therefore provides no basis for allowing Defendant to avoid liability in these circumstances, in which the alleged misconduct violated a valid restriction. *See Miselis*, 972 F.3d at 547.

Equally unavailing is Defendant's comparison to *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016). *See* Def. Br. at 13-14. The question there concerned the retroactivity of the Supreme Court's prior holding that the Eighth Amendment prohibited sentencing

1    juveniles to mandatory sentences of life in prison without the possibility of parole. *See*
2    *Miller v. Alabama*, 567 U.S. 460, 465 (2012). Concluding that the holding did apply retro-
3    actively, the Court held that the petitioner – who had received a mandatory sentence of
4    life in prison without the possibility of parole for a murder he committed as a juvenile –
5    could rely on *Miller* to challenge his sentence. *Montgomery* thus involved a situation where
6    the petitioner had been found liable under the precise type of provision that the Court
7    had held unconstitutional, *i.e.* a law requiring that the petitioner be sentenced to life
8    without parole for a crime committed as a juvenile. *See Montgomery*, 136 S. Ct. at 726-27.
9    In contrast, PETA's potential liability here derives from the autodialer restriction, which
10   the Supreme Court has confirmed is constitutional. *AAPC*, 140 S. Ct. at 2343-44.[3]

11        **5.** PETA argues that if it and similarly-situated entities can be liable for calls and
12   texts made before *AAPC*, but government-debt collectors cannot be held liable for calls
13   or texts made during this time, then that would mean "the political party in power could
14   pass similar unconstitutional exceptions to favor its own preferred speech, knowing it
15   could only be penalized on a prospective basis once a challenge reached the Supreme
16   Court." Def. Br. at 14. PETA identifies no such provision that has ever been enacted,
17   and PETA's speculation provides no reason for this Court to ignore the *AAPC* plural-
18   ity's clear statement that entities like PETA may be liable for text messages sent before
19   the government-debt exception's severance, or the substantial precedent supporting that
20   conclusion.

---

22   [3] Without substantial discussion, Defendant cites *Sessions v. Morales-Santana*, 137 S. Ct.
23   1678 (2017), noting that there the Supreme Court had stated that a "defendant convicted
     under a law classifying on an impermissible basis may assail his conviction without re-
24   gard to the manner in which the legislature might subsequently cure the infirmity." Def.
     Br. at 13 (quoting *Morales-Santana*, 137 S. Ct. at 1699 n.24). But the quoted section from
25   *Morales-Santana* primarily discussed *Grayned*, which is distinguishable from the situation
26   here for the reasons explained above. Indeed, the statement in *Morales-Santana* empha-
     sizes that *Grayned* involved *criminal* liability. 137 S. Ct. at 1699 n.24. Finally, the *AAPC*
27   plurality was well aware of this case, *see AAPC*, 140 S. Ct. at 2354 (citing *Morales-Santana*),
28   but nonetheless stated shortly after this citation that *AAPC* "does not negate the liability
     of parties who made robocalls" prior to that decision. 140 S. Ct. at 2355 n.12.

### III.   PETA's Challenge to an FCC Rule Should Be Rejected

The autodialer restriction does not apply to calls that are "made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A). For calls and texts that include an "advertisement" or that "constitute[] telemarketing," the FCC requires a tel-emarketer to receive signed, written consent to qualify for this exception. 47 C.F.R. § 64.1200(a)(2), (f)(9); *see* 27 FCC Rcd. 1830, 1838 ¶ 20 (2012). For other calls, the FCC does not require signed and written consent. *See* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992); 30 FCC Rcd. 7961, 8028-29 ¶ 141 (2015). Defendant contends that Plaintiff can succeed in this case only if Defendant's text messages are subject to the more rigorous consent requirement. Def. Br. at 16. From this, Defendant argues that the complaint must be dismissed because the FCC's heightened consent requirement is unconstitutional be-cause its applicability depends on a call's content, *i.e.* whether or not the call constitutes advertising or telemarketing. *Id.* at 16-17.

Should the Court reach this constitutional challenge, it should nonetheless refuse to consider it. Although Defendant styles its challenge as one to "the application of the TCPA," Def. Br. at 14, it is readily apparent that Defendant is actually challenging an FCC rule that this Court lacks jurisdiction to consider. The Communications Act of 1934 establishes the exclusive mechanism for challenging the validity of final orders is-sued by the FCC. Section 402(a) of that statute specifies that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter [which includes the TCPA] . . . shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28 [of the United States Code]." 47 U.S.C. § 402(a). The cross-referenced chapter of the U.S. Code, also known as the Administrative Orders Review Act or the Hobbs Act, provides in relevant part that "[t]he court of appeals . . . has *exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), *or to determine the validity of* all final orders of the Federal Communications Commission made reviewable by [47 U.S.C. § 402(a)]." 28 USC. § 2342(1) (emphasis added). Accordingly, Defendant is jurisdictionally barred from asking this Court to strike down the FCC regulation.

1    Defendant seems to concede this issue in its reply brief, in which Defendant states

2    that "[e]ven if this Court does not have jurisdiction to 'invalidate' the FCC order, the

3    Court can and should disregard the FCC's definition of 'prior express consent' because

4    the FCC's definition necessarily leads to a content-based restriction on free speech."

5    Def. Reply at 9. However, if the Court "does not have jurisdiction to 'invalidate' the

6    FCC order," then the Court would have no basis to "disregard" that order, which would

7    otherwise provide the substantive law to apply. *See Wilson v. A.H. Belo Corp.*, 87 F.3d 393,

8    397 (9th Cir. 1996) (explaining that district courts lack jurisdiction to review FCC final

9    orders where the "proceedings would have required the district court to enjoin, set aside,

10   suspend, or determine the validity of the [final order]"); *United States v. Dunifer*, 219 F.3d

11   1004, 1007 (9th Cir. 2000) ("[T]he Communications Act's jurisdictional limitations apply

12   as much as to affirmative defenses as to offensive claims."); *see also, e.g., Greenley v. Labor-*

13   *ers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) (noting in a TCPA

14   case that "this Court lacks jurisdiction to entertain a constitutional challenge as it per-

15   tains to FCC orders").

16   In any event, Defendant's argument would fail on the merits. Defendant argues

17   that the FCC's rule is content based and therefore subject to strict scrutiny. But the FCC

18   rule is subject only to intermediate scrutiny – not strict scrutiny – and Defendant makes

19   no argument that the rule would fail intermediate scrutiny. *See* Def. Br. at 14-17; Def.

20   Reply at 9-10. Contrary to Defendant's contention, the FCC rule does not restrict speech

21   based on content. The rule only governs the type of consent needed before someone

22   may use a particular technological means (an autodialer) to engage in telemarketing or

23   advertising. The rule therefore does not prevent Defendant from sending *any* substantive

24   message to *any* potential recipient – all it does is regulate the *manner* in which that mes-

25   sage can be sent. Defendant could have easily avoided liability by sending its message to

26   plaintiff through any means besides through an autodialer, or it could have secured the

27   requisite consent before using an autodialer. Accordingly, the FCC rule is at most a

28

"time-place-manner restriction" on speech, and such restrictions are subject only to intermediate scrutiny. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

That the rule applies only to autodialed calls and texts that contain an advertisement or constitute telemarketing, *see* 47 C.F.R. § 64.1200(a)(2), (f)(9), does not provide any reason to apply more than intermediate scrutiny. That is so because advertising and telemarketing constitute commercial speech, and regulations of commercial speech are subject only to intermediate scrutiny as well. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018); *Retail Dig. Network, LLC v. Prieto*, 861 F.3d 839, 846 (9th Cir. 2017) (rejecting argument that "content- or speaker-based regulations of commercial speech" require more than traditional intermediate scrutiny). Defendant does not argue that the FCC regulation would fail intermediate scrutiny, *see* Def. Br. at 14-17; Def. Reply at 9-10, and the FCC has provided sound reasons justifying its rule. *See, e.g.*, 27 FCC Rcd. at 1838-40, ¶¶ 20-26. Accordingly, even if the Court could consider Defendant's argument on the merits, Defendant provides no basis to invalidate the rule.

## CONCLUSION

For the foregoing reason, Defendant's constitutional challenge should be rejected.


DATED:  February 26, 2021          By:  */s/ Joshua C. Abbuhl*
                                        JOSHUA C. ABBUHL

                                   BRIAN M. BOYNTON
                                   Acting Assistant Attorney General

                                   ERIC R. WOMACK
                                   Assistant Director, Federal Programs Branch

                                   JOSHUA C. ABBUHL
                                   Trial Attorney (D.C. Bar No. 1044782)
                                   United States Department of Justice
                                   Civil Division, Federal Programs Branch
                                   1100 L St. NW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Washington, D.C. 20005
(202) 616-8366 (tel.)
(202) 616-8470 (fax)
Joshua.Abbuhl@usdoj.gov

*Counsel for the United States of America*